MICHAEL EDDINGS, a Minor, by Gordon Leon Eddings, his Father and Next Friend, *et al.*, Plaintiffs-Appellants, v. DUNDEE TOWNSHIP HIGHWAY COMMISSIONER *et al.*, Defendants-Appellees.

Second District   No. 84—0370

Opinion filed May 17, 1985.

Peter C. John and Mark W. Rattan, both of Phelan, Pope & John, of Chicago, for appellant.

Robert J. Morrow, State's Attorney, of Geneva (Edgar K. Collison, of Northbrook, of counsel), for appellee County of Kane.

John P. Callahan, of Casey, Krippner & Callahan, of Geneva, for other appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, Michael Eddings, a minor, by his mother and father, and his parents individually filed suit against defendant, Cindy Holtz (later dismissed as a party upon settlement), and in subsequent

amended complaints against defendants the Dundee township highway commissioner and the township of Dundee (hereinafter township), Crichton's, Inc., alleged as Holtz' employer (also dismissed as a party upon settlement), and the county of Kane (hereinafter county) for injuries sustained by Michael, who, the parties agree, was jogging along Sleepy Hollow Road, Dundee, when he was struck by an automobile driven by Holtz. Plaintiffs appeal from orders granting the county's amended motion to strike and dismiss the amended complaint against it and the granting of the township's motion for summary judgment.

On appeal, plaintiffs contend that the pleadings and depositions submitted show a duty owed and genuine issues of material fact as to the counts against the township, and that the motion to dismiss the county was improperly granted.

Plaintiffs' fourth amended complaint, in essence, alleged in counts I through VI that the township, having jurisdiction over Sleepy Hollow Road, failed to properly construct, repair, and maintain the road and its shoulders for vehicular and pedestrian traffic. Specifically, plaintiffs alleged that the road and its shoulders had widths too narrow for the safe passage of vehicles and pedestrians; that the township allowed an overgrowth of foliage along the roadway which prevented a clear view of the road by the driver of the vehicle, Cindy Holtz, and which obstructed passage on the shoulder of the road by pedestrians; and that the township failed to post signs warning motorists of the condition of the road and the presence of pedestrians along the road. Counts X through XII against the county alleged, *inter alia*, that the county had undertaken the duty of advising the township regarding the best methods of construction, maintenance and repair of township roads and the duty of approving or disapproving the placement of traffic control devices by the township, and thereby was liable to plaintiffs for the same failure to maintain the road as alleged against the township. Counts VII through IX were against Crichton's, Inc., alleged to be Cindy Holtz' employer, and were later dismissed upon settlement.

The township filed its motion for summary judgment which contained arguments of law and fact, and attached excerpts from several depositions. Plaintiffs filed a memorandum of law in opposition to the township's motion. Numerous depositions were subsequently filed by plaintiffs which appear to have been argued by the parties and considered by the court on the motion for summary judgment. Briefly summarized, the depositions submitted were as follows.

Cindy Holtz, the operator of the automobile, stated in her deposition that Sleepy Hollow Road is very narrow and that the overhang-

ing branches from the trees alongside the roadway cast shadows obscuring visibility. Holtz related that on the day of the incident, it was very sunny and she was not wearing sunglasses. After she had driven from a sunny part to five or 10 feet within a shaded portion of the roadway, she heard a thump and briefly saw the back of Michael's head on the passenger's side of her vehicle. Holtz also noted that she did not see Michael until she had hit him and that the right headlight and windshield of her car were damaged as a result of the accident. Finally, Holtz stated that while driving along the road she, at all times, remained one foot from the edge of the pavement surface.

Illinois State Trooper James Griffith investigated the August 21, 1980, incident and stated in his deposition that Michael was lying on the pavement approximately 135 feet north of the I-90 overpass when he arrived at the scene. Griffith noticed that there was no definite roadway shoulder next to the portion of the pavement where Michael was lying and the pavement edge is jagged blacktop which turns into gravel and dirt. His inspection of the area did not disclose the presence of foliage that would have impeded the progress of a pedestrian along the shoulder. Officer Griffith also related that intermittent areas of shade and sun frequently occur on Kane County roads and that this causes glare on vehicle windshields, making visibility very poor.

Former Dundee highway commissioner David Baresel stated in his deposition that his duties as highway commissioner included maintaining, upgrading, trimming overgrown foliage away from, and placing traffic control devices on, the local roads depending on the traffic count and money available. Baresel indicated that, while he was commissioner, only existing road signs within the township were replaced and no new signs were erected. The former highway commissioner noted that approximately 100 pedestrians walked along Sleepy Hollow Road on a given day. Normally, the replacement of traffic signals and signs within the township was performed by Kane County at Baresel's request. However, Baresel related that he never requested Kane County to repair or improve that particular portion of the road, and he was not sure whether the county could erect signs without his approval. Baresel assumed it could, since many signs were erected without his approval, although he did not know whether the county had erected them. In describing the designated function of Sleepy Hollow Road, Baresel stated that it did not have sidewalks and was not designed for pedestrian traffic.

Present Dundee highway commissioner Charles Behm stated in his deposition that Sleepy Hollow Road is located within the Dundee township district and the township has maintenance authority over

the road. Behm related that the county must approve all road signing. A sign, however, must first be requested by a local township commissioner, although he was unsure whether the county could erect a sign without the township commissioner's approval, but he thought it probably could. Behm stated that he did not consider Sleepy Hollow Road dangerous and, accordingly, he did not request a sign. During Behm's term in office, the only accident occurring at that particular area was the one in the instant case. Behm also recognized that the roadway in question was regularly used by joggers. Finally, Behm commented that decisions to trim roadway foliage are based upon his observations.

Kane County highway superintendent William Carter stated in his deposition that Sleepy Hollow Road is under the jurisdiction of the Dundee township highway department and that the only role of the county is to obtain funding for projects and to supervise construction. Carter indicated that before any signs could be placed on a township roadway by the county, a request must first come from the township highway commissioner and that he never received any oral or written requests from the Dundee highway commissioners concerning the construction and/or general maintenance of Sleepy Hollow Road. Carter also noted that the county never made any suggestions as to the signing or reconstruction of Sleepy Hollow Road.

Kane County highway department traffic engineer Richard Dencer stated in his deposition that before any traffic control devices could be placed within Kane County, permission must first be obtained from superintendent Carter. In most instances, Carter sends him out to perform a study on a particular area and make a recommendation. Dencer indicated that 99% of the time he bases his recommendations on the State Manual on Uniform Traffic Control Devices. The studies he performs, however, would only be undertaken by the county upon a township request, and the township has the initial responsibility of determining whether a sign should be erected. Dencer stated that he was not aware of any situations where Kane County had initially requested the signing or reconstruction of a township road.

Plaintiffs' expert witness, Joseph Kostur, stated in his deposition that he is currently employed as the safety and claims manager for the Illinois Department of Transportation. Kostur indicated that he viewed the accident site on four occasions and found it to be hazardous in several respects. He noted that the roadway lacked a clear recovery area; that the foliage along the roadway should have been removed to provide better visibility; and that signs should have been posted warning motorists of pedestrians, low shoulders, a no-passing

zone, and the speed limit. Kostur related that many children use Sleepy Hollow Road as an accessway to the Elgin parks. Kostur further explained that in his opinion Michael was facing away from traffic and jogging in a southerly direction, on the pavement surface, when he was struck by the automobile. Kostur admitted that in his experience he was not aware of any standards or regulations requiring the removal of tree branches overhanging a roadway and that he would classify Sleepy Hollow Road as a rural service road.

Finally, defendants' expert Robert Seyfried stated in his deposition that he is the associate director of Northwestern University's transportation engineering division of traffic institute and is also a road design and reconstruction consultant. Seyfried examined Sleepy Hollow Road on two occasions and found the pavement in poor condition. However, Seyfried explained that in his opinion there was no causal relationship between the design of the road and the resulting accident and that the road was adequate for the traffic it served. He also noted the current trend in road construction is that if a road is functioning adequately it need not be upgraded to conform to Illinois Design Manual standards. Based upon his examination, he concluded that the width of the shoulder had nothing to do with the accident because it was certainly wide enough for a jogger. Seyfried agreed with plaintiffs' expert that there is absolutely no need to trim overhanging foliage to prevent it from casting shadows on the roadway. Seyfried also explained that the mere fact of pedestrian activity along the side of the roadway would not necessarily mean the roadway should be widened or that signs should be erected. Instead, the presence of pedestrians would only influence a decision to install sidewalks. Seyfried also concluded that no such roadway modifications or warning signs were necessary at that area of Sleepy Hollow Road.

The county filed an amended motion to dismiss, it having not become a defendant until the filing of plaintiffs' fourth amended complaint. The motion to dismiss does not specify whether it is brought under section 2—615 or section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, pars. 2—615, 2—619). In its motion, the county requested dismissal on the basis that it was self-insured, and that, under certain provisions of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1983, ch. 85, par. 1—101 *et seq.*), it was immune from liability. The motion also requested dismissal, because Sleepy Hollow Road was under the jurisdiction of the township and the county had no obligation to maintain it. The county filed an excerpt from the deposition of the former Dundee township highway commissioner, David Baresel, in which he

states that he never made any request to the county to repair and improve Sleepy Hollow Road. Later the county filed the affidavit of William E. Carter, superintendent of highways for Kane County, which stated that the portion of the road where the accident occurred was neither within the jurisdiction of the county, nor maintained or owned by the county. Plaintiffs also filed a memorandum in opposition to the motion.

Following oral arguments by the parties on the two motions, the trial court took the matters under advisement. Both motions were later granted by the trial court without explanation of the legal or factual basis for its rulings.

■ We consider first the plaintiffs' appeal from the granting of summary judgment in favor of the township. Plaintiffs contend that the township owed a duty to maintain the foliage along Sleepy Hollow Road, and that it violated this duty by allowing trees along the roadway to cast intermittent shadows and create a "tunnel effect," thereby blinding and confusing Cindy Holtz, who was unable to see Michael Eddings as he was proceeding along the roadway. In addition, plaintiffs argue that the evidence of foliage along the shoulder constituted an obstruction which forced Michael onto the roadway. Plaintiffs rely on *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 413 N.E.2d 1242, and *First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326, for the proposition that highway authorities have a duty to maintain foliage in a condition which allows clear visibility, which is not just limited to a duty to trim foliage only when it constitutes a physical obstruction as the township contends.

The plaintiffs also contend that the township violated a duty to construct and maintain the pavement and the shoulder of the road of sufficient widths to allow safe passage of vehicles and "pedestrians" using the road. Also, plaintiffs maintain that the township violated a general duty to place and maintain traffic control devices which would have warned of the "dangerous condition which existed on the road concerning pavement width, shoulder width, and visibility." There were also no signs warning motorists of the presence of pedestrian crossing.

Finally, plaintiffs argue that besides the existence of a legal duty to Michael, there are genuine issues of material fact on the issues of negligence and proximate cause which preclude the granting of summary judgment.

The township essentially contends that it neither owes a duty under these facts, nor was any failure to act shown to be a proximate cause of Michael's injury. While the duty issue is primarily raised by

the township only as related to plaintiffs' argument that the township had a duty to remove tree branches which overhang the roadway, it is also perfunctorily mentioned as to the other alleged failures by the township. Moreover, in reviewing a trial court's ruling, we may sustain it upon any ground warranted in the record. See *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9.

In an action for negligent conduct, the plaintiff must establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162, 456 N.E.2d 116.) The existence of a duty must be determined by the courts as a matter of law (98 Ill. 2d 158, 163, 456 N.E.2d 116), and the law applicable to motions for summary judgment which involve the issue of duty is set forth in *Barnes v. Washington* (1973), 56 Ill. 2d 22, 26-27, 305 N.E.2d 535:

> " 'It may be stated generally that if what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered.' (*Fooden v. Board of Governors*, 48 Ill. 2d 580, at 587.) This court has also held that the entry of a summary judgment is proper when only a question of law is involved. (*Allen v. Meyer*, 14 Ill. 2d 284.) Thus, if under the pleadings and affidavits it appears that the defendant owed no duty to the incompetent, the granting of the motion for summary judgment was proper." 56 Ill. 2d 22, 26-27, 305 N.E.2d 535.

The first question to be addressed, therefore, is whether the township owed a duty to Michael, a pedestrian along the roadway, under the circumstances alleged in the complaint as supplemented by the material facts contained in the depositions filed in response to the motion for summary judgment. For the purposes of our analysis of the duty question, it makes no difference here whether Michael Eddings was along the shoulder or actually on the paved portion of the road when he was struck by the vehicle.

Under the Illinois Highway Code, the township highway commissioner is responsible for maintaining township roads (Ill. Rev. Stat. 1983, ch. 121, par. 6—201.7; see *Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 13, 413 N.E.2d 1242), and recent decisions have reinforced the traditional rule that local governments have an obligation to maintain public property in a reasonably safe condition.

(*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 163-64, 456 N.E.2d 116.) The Local Governmental and Governmental Employees Immunity Act specifies certain limitations on the liability of such bodies, and relevant hereto, one of these limitations provides in part:

> "(a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such condition." (Ill. Rev. Stat. 1983, ch. 85, par. 3—102(a).)

This language evinces a legislative intent to extend a duty of care only to those persons by whom the local government intended the property to be used. *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 164-65, 456 N.E.2d 116; *Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 340-41, 431 N.E.2d 62; see also *Burnett v. Donath* (1984), 127 Ill. App. 3d 131, 468 N.E.2d 501.

■ It is clear from this record that the township has not constructed a sidewalk along Sleepy Hollow Road for pedestrian travel, although it does have the authority to build a sidewalk should it choose to do so. (See Ill. Rev. Stat. 1983, ch. 121, par. 6—201.14.) Appellate court decisions of this State have held that, while a municipality is required to maintain its streets and sidewalks in a reasonably safe condition considering the use to be made of such area, the municipality has no duty to provide a safe place for pedestrians to walk along a street where no sidewalk has been constructed, nor a duty to provide for the safeguarding of pedestrians when they are walking upon the public streets. *Best v. Richert* (1979), 72 Ill. App. 3d 371, 375-76, 389 N.E.2d 894; *American State Bank v. Cude* (1975), 30 Ill. App. 3d 206, 207-08, 331 N.E.2d 825; *Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473, 476-77, 300 N.E.2d 590.

■ Plaintiffs argue that those appellate decisions cited above "merely fashioned a rule of law which holds that local government entities are not liable for failure to provide special pedestrian walkways," but do not hold that a pedestrian who ventures onto the street cannot recover where he shows the accident was caused by a defect or obstruction in the roadway itself. This contention misses the mark. Even assuming negligence in the maintenance of the road, plaintiffs

cannot recover if there is no duty owed to a pedestrian by the township. This is not to say that motor vehicles may disregard the presence of pedestrians upon the street, but we are here concerned with the liability of the township. (See *Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473, 477-78, 300 N.E.2d 590.) Although plaintiffs also cite to section 11—1007 of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—1007) and contend that this provision "implies that road pavements should be made safe for pedestrians," this statute merely regulates vehicular and pedestrian traffic upon a roadway and does not thereby create a duty on the governmental unit responsible for maintenance of the roadway.

Finally, plaintiffs maintain that the decisions in *American State Bank v. County of Woodford* (1977), 55 Ill. App. 3d 123, 371 N.E.2d 232, and *Thorsen v. City of Chicago* (1979), 74 Ill. App. 3d 98, 392 N.E.2d 716, establish the existence of a duty of the township toward a pedestrian which is controlling here. These cases are factually inapposite. In *American State Bank*, the accident in question was between two motor vehicles upon a roadway found to be defective which proximately caused plaintiff's injury. In *Thorsen*, a duty to maintain a sidewalk or otherwise provide a safe place to walk, or give notice to the public that the street was closed to pedestrian traffic, was found to be owed to a pedestrian by the city of Chicago where it was shown that the city had provided a sidewalk, but removed it for the purpose of installing a new water main.

■ Having concluded that the township does not owe a duty of care to plaintiffs under the facts present, it is unnecessary to consider the proximate cause issue extensively addressed by the parties in their briefs. (See *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 165, 456 N.E.2d 116.) For the foregoing reasons, the granting of summary judgment for the township is affirmed.

■ As to the counts against the county which were dismissed by the trial court upon the county's motion to strike and dismiss, we are confronted with a problem which all too frequently arises on appeal. The county did not specifically designate below whether the motion to dismiss was brought under section 2—615 or section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, pars. 2—615, 2—619). Meticulous practice dictates that a lawyer specifically designate whether his motion to dismiss is pursuant to section 2—615 or section 2—619. (*Galayda v. Penman* (1980), 80 Ill. App. 3d 423, 424-25, 399 N.E.2d 656.) The parties, in arguing the motion to dismiss in the trial court, appear to have made reference to affidavit and deposition evidence. The trial court granted the motion to dismiss without

explanation of any legal basis for the decision. On appeal, the county now contends the dismissal was really an order granting summary judgment, was properly granted, and we should affirm on that basis as well. Plaintiffs believe the motion to dismiss below was pursuant to section 2—619 and state that dismissal under section 2—619 is inappropriate where plaintiffs have filed a jury demand and issues of fact are presented. See Ill. Rev. Stat. 1983, ch. 110, par. 2—619(c).

It is not the reviewing court's responsibility to unravel the record to suit the whims of the litigants depending upon which forum they address and what argument at the time best fits their contention. We addressed a similar situation in *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 450 N.E.2d 1360, and concluded that, where prejudice results from such an improper motion practice, we will reverse without addressing the merits of the motion as argued on appeal. Prejudice to the plaintiffs is evident, and although no objection was raised below by plaintiffs, this court may ignore the waiver rule. (See *Augsburg v. Franks Car Wash, Inc.* (1982), 103 Ill. App. 3d 329, 333, 431 N.E.2d 58.) Accordingly, we reverse the order dismissing the county and remand for further proceedings as to it. We express no opinion on whether the cause can be decided prior to trial on a properly brought motion.

The granting of summary judgment for the township is affirmed, and the dismissal of the county is reversed and remanded.

Affirmed in part, reversed in part and remanded.

NASH, P.J., and UNVERZAGT, J., concur.