MARY   HORRELL,   Plaintiff-Appellant,   v.   THE   CITY   OF   CHICAGO,
Defendant-Appellee.

First District (1st Division)   No. 85—1986

Opinion filed June 30, 1986.

James D. Griffith, of James D. Griffith, Ltd., and Marshall E. LeSueur, both of Chicago, for appellant.

James D. Montgomery, Corporation Counsel, of Chicago (Mary K. Rochford and Julie Elena Brown, Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

Plaintiff, Mary Horrell, brought suit in the circuit court of Cook county against the city of Chicago (city), the Chicago Transit Authority (CTA), and Joseph Kawa, an individual, for injuries resulting when Kawa's truck hit the plaintiff as she crossed a city street. One circuit court judge denied a motion of the city for summary judgment, but, subsequently, a second circuit court judge, after further consideration, granted the city's motion. At the same time, the second judge also granted the CTA's motion for summary judgment. Trial on the remaining allegations concerning Joseph Kawa was continued pending the disposition of this appeal.

The facts underlying the suit are as follows. On July 1, 1983, Mary Horrell got off a CTA bus on the east side of State Street at the "T" intersection of State and Maple in Chicago. Following the bus' departure from the intersection, she proceeded to cross State Street in a westerly direction at a point where no crosswalk markings had been painted. As she was crossing the street, she was struck by a truck driven by Joseph Kawa. It is undisputed that crosswalks existed across State Street within one-half block in both directions of the point where Ms. Horrell chose to cross the street. Ms. Horrell brought suit against the city of Chicago, the CTA, and Joseph Kawa for injuries resulting from the collision. She alleged that the city was negligent in failing to

provide a crosswalk for a bus stop at a busy intersection and that the city's own "Street Marking Standards" required it to do so. The city denied the allegations of negligence and asserted the Local Governmental and Governmental Employees Tort Immunity Act as an affirmative defense. (Ill. Rev. Stat. 1985, ch. 85, par. 1—101 *et seq.*) The city filed its motion for summary judgment on March 5, 1985, which, as stated previously, was originally denied by the first judge on April 24, 1985. Ms. Horrell was given leave to file a first amended complaint which she did. The amended complaint alleged that the city negligently:

(a) failed to provide a crosswalk in violation of section 27—398 of the Municipal Code of Chicago;

(b) failed to provide a crosswalk in accordance with its "Street Marking Standards" adopted by the City Bureau of Traffic Engineering and Operations;

(c) permitted a bus stop to be located at an unmarked crosswalk in violation of section 27—412 of the Municipal Code of Chicago;

(d) permitted another municipal corporation (the CTA) to "usurp and abuse its obligation" to establish and maintain bus stops.

The case was transferred to the second judge, Judge Sodaro, on June 10, 1985. The city filed an answer to the plaintiff's complaint on June 12, 1985. No notice of motion or specific motion for summary judgment directed against this first amended complaint was filed by the city. However, the record reveals that on June 13 and 14, 1985, extensive discussions were conducted by Judge Sodaro and counsel for plaintiff concerning motions for summary judgment on behalf of both the CTA and the city. After some additional arguments, Judge Sodaro granted both motions. In granting the city's motion, the trial judge found that there was "no duty running from the City to the plaintiff in this case, that there was no contested issue of fact," and accordingly, the city was entitled to summary judgment. Ms. Horrell now appeals the trial court's granting of summary judgment in favor of the city.

■ It is well settled that a motion for summary judgment should only be granted if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005; *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457.) The purpose of summary judgment is not to try an issue of fact but to determine whether one exists. (*Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 339, 431 N.E.2d 62.) If all the evidence presented to the

trial court does not raise an issue of material fact, then the motion for summary judgment should be granted, as stated above, if warranted as a matter of law. *Kramer v. Weedhopper, Inc.* (1986), 141 Ill. App. 3d 217, 221, 490 N.E.2d 104.

■■ While the primary issue on appeal is whether the trial court erred in granting the city's motion for summary judgment, Ms. Horrell also alleges that the trial court committed procedural errors in addressing the city's motion. Specifically, Ms. Horrell contends that the question of duty, which was the issue here, is a question of law that is more properly decided by a motion to dismiss rather than a motion for summary judgment; and, that the city's written motion for summary judgment was actually filed prior to the first amended complaint and did not directly relate to the amended complaint; and thus, she says summary judgment was improperly granted. Our review of the record, however, reveals that there were over two days of discussion and argument before Judge Sodaro concerning the city's motion for summary judgment and no objection was made by any party concerning any of the procedures employed by the city or followed by the court. It is well settled that alleged questions of error not raised in the trial court are waived for purposes of review and may not be raised for the first time on appeal. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872.) Therefore, we need not consider these questions raised by the plaintiff concerning the propriety of the procedures in considering the city's motion.

■■ However, we note that in a cause of action alleging negligence, such as here, the plaintiff must establish the existence of a duty, a breach of that duty and an injury proximately resulting from the breach of the duty. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 18, 440 N.E.2d 96.) This question of duty is a question of law, as plaintiff contends. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 163, 456 N.E.2d 116.) But, contrary to the plaintiff's contention, a motion for summary judgment does properly address an issue of duty. (*Eddings v. Dundee Township Highway Commissioner* (1985), 135 Ill. App. 3d 190, 197, 478 N.E.2d 888.) As our supreme court in *Barnes v. Washington* (1973), 56 Ill. 2d 22, 27, 305 N.E.2d 535, expressly noted:

> "This court has also held that the entry of a summary judgment is proper when only a question of law is involved. (*Allen v. Meyer*, 14 Ill. 2d 284.) Thus, if under the pleadings and affidavits it appears that the defendant owed no duty ***, the granting of [a] motion for summary judgment [is] proper."

Therefore, Ms. Horrell is incorrect in her claim that the question of duty could only be decided by a motion to dismiss.

■ In her complaint in the circuit court, Ms. Horrell alleged that the city was negligent in its failure to provide a crosswalk at the intersection of State and Maple. She maintained that the city's negligent failure to place a crosswalk at the intersection caused or contributed to Mr. Kawa's striking her and causing the injuries she suffered. Ms. Horrell does not, however, allege that the city negligently constructed the intersection, or that the crosswalk was established and negligently maintained. Rather, she is contending that two city of Chicago municipal ordinances, Municipal Code of Chicago, sections 27—398 and 27—412, affirmatively impose a duty on the city to paint crosswalks at apparently every bus stop in the city. In the alternative, Ms. Horrell argues that even if the above ordinances do not create such a duty, the city of Chicago "Street Marking Standards," as adopted by the City Bureau of Traffic Engineering and Operations, constituted a "plan" under section 3—103(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 3—103(a)), for the installation of crosswalks at intersections to coincide with bus stops in the city, and that by failing to properly implement this "plan," the city created an unsafe condition. We disagree with Ms. Horrell and find that the city of Chicago owed no common law or statutory duty to plaintiff to construct a crosswalk at the intersection of State and Maple.

■ The traditional common law duty of local governments concerning public property is a duty to maintain that property in a reasonably safe condition. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 163, 456 N.E.2d 116.) The duty is only to "maintain" the property and does not require the creation of public improvements. (*American State Bank v. Cude* (1975), 30 Ill. App. 3d 206, 207, 331 N.E.2d 825.) A municipality is not liable for the failure to undertake public improvements even where an ordinance authorizes such a project. (*Best v. Richert* (1979), 72 Ill. App. 3d 371, 374-75, 389 N.E.2d 894.) Thus, the duty to maintain does not commence until an improvement is actually undertaken. (*Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473, 478, 300 N.E.2d 590.) Therefore, under the facts alleged here, the city of Chicago owed no common law duty to Ms. Horrell to establish a crosswalk at the intersection of State and Maple, and since it had not placed a crosswalk at the intersection, there could not be a duty of maintenance.

■ We further find that Ms. Horrell has failed to establish the existence of a statutorily created duty owed by the city of Chicago to paint crosswalks at every bus stop in the city. In support of her argument, Ms. Horrell cites sections 27—398 and 27—412 of the Municipal

Code of Chicago. Section 27–412 provides that:

"The Commissioner of Public Works, subject to the concurrence of the Chicago street traffic commission and to the approval of the city council, is hereby authorized and required to establish bus stops, bus stands, taxicab stands, and stands for other passenger common-carrier motor vehicles on such public streets in such places and in such number as he shall determine to be of the greatest benefit and convenience to the public, and every such bus stop, bus stand, taxicab stand, or other stand shall be designated by appropriate signs." Amend. Coun. J. Dec. 27, 1982, p. 14398.

Section 27–398 authorizes the Commissioner of Public Works "[t]o designate and maintain, by appropriate devices, marks, or lines upon the surface of the roadway, crosswalks at intersections where in his opinion there is particular danger to pedestrians crossing the roadway and at such other places as he may deem necessary." Amend. Coun. J. Dec. 27, 1982, p. 14398.

It is Ms. Horrell's position that the language of these two ordinances is mandatory and that these ordinances, when read together, impose a duty on the city of Chicago to provide a crosswalk at every bus stop in the city. Therefore, she argues that the failure to have a crosswalk at the bus stop was a breach of the duty owed to her by reason of these ordinances.

We disagree with Ms. Horrell's argument. Both of these ordinances are clearly discretionary, and authorize the commissioner of public works to place bus stops where "as he shall determine" they are appropriate, and place crosswalks where "in his opinion there is a potential danger" and "such other places as he may deem necessary." Such ordinances are readily distinguishable from the ordinances involved in *French v. City of Springfield* (1976), 65 Ill. 2d 74, 357 N.E.2d 438, and *First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326, cited by Ms. Horrell in support of her argument. Unlike the city of Chicago's ordinances here, the ordinances in *French* and *First National Bank* contained mandatory language which required the city to affirmatively take specific action. In *First National Bank* the ordinances provided in pertinent part that it was the city's duty to summarily remove any obstruction or encroachment on the city's property. Similarly in *French*, the ordinance required the city to obtain a permit before a street could be barricaded. We, therefore, agree with the trial court's determination here that, in contrast to the ordinances in *French* and *First National Bank*, the city of Chicago ordinances cited by Ms. Horrell are merely authorizing ordinances and

did not impose a duty on the commissioner of public works either to establish any bus stops or to designate any crosswalks. These ordinances merely permit him to do so as he sees fit.

■ Ms. Horrell further argues, however, that the painting of the crosswalks at certain intersections, together with the city's "Street Marking Standards," indicate the creation and adoption of a plan of crosswalks at all intersections and all bus stops. It is her contention that because of the city's failure to place a crosswalk at the intersection here, the city has improperly implemented the plan. Specifically, Ms. Horrell alleges that when the city put in a north-south crosswalk on Maple and east-west crosswalks at 15 other adjacent streets pursuant to the "Street Marking Standards," the city only partially, and thus imperfectly, implemented its plan.

Ms. Horrell's argument is an attempt to demonstrate that the city owed her a duty of care based on an exception to the grant of immunity to municipalities found in section 3—103(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 3—103(a)). That exception holds a local public entity to be liable "if after the execution of [a] plan or design it appears from its use that it has created a condition that it is not reasonably safe."

We find no merit in Ms. Horrell's argument here for two reasons. First, as the trial court properly found, the "Street Marking Standards" do not create an overall plan, but merely establish guidelines for placing crosswalks and do not delineate particular locations for crosswalks. Secondly, the location of each crosswalk is separately determined and would involve a discretionary decision on the part of the commissioner of public works each time a crosswalk was established and, thus, a separate plan.

In support of her argument, Ms. Horrell cited *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, 251 N.E.2d 227, and *Johnston v. City of East Moline* (1950), 405 Ill. 460, 91 N.E.2d 401. We find Ms. Horrell's reliance on these two cases to be misplaced. In *Baran*, the city of Chicago Heights had erected a light pole at a location which caused inadequate lighting to be provided. The supreme court, relying on its earlier holding in *Johnston v. City of East Moline*, held that "where a city undertakes to provide lights, it is liable for injuries which result from deficient or inadequate ones." (*Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, 180, 251 N.E.2d 227.) In *Johnston*, the city of East Moline had failed to repair a traffic signal which was found to have been the proximate cause of plaintiff's injuries. The supreme court there held that, "after the signal system in question was

constructed and in operation, the keeping of it in such condition that it would not inevitably be hazardous and invite citizens into danger was a corporate duty, for the failure of which liability was incurred." (*Johnston v. City of East Moline* (1950), 405 Ill. 460, 468, 91 N.E.2d 410.) Here the city of Chicago did not place a crosswalk at the intersection of State and Maple; hence, there is no question concerning the adequacy of the crosswalk or the propriety of its location. Therefore, the holdings in *Baran* and *Johnston* are inapposite.

■ As a collateral matter, the city argues, and we agree, that Ms. Horrell's reliance on section 3—103(a) of the Local Governmental and Governmental Employees Tort Immunity Act as a basis for her claim that the city owed her a "duty" to paint a crosswalk at the intersection of State and Maple is erroneous. Section 3—102 of the Act codifies the common law duty of a local public entity to maintain its property. (Ill. Rev. Stat. 1985, ch. 85, par. 3—102; see *Warchol v. City of Chicago* (1979), 75 Ill. App. 3d 289, 294, 393 N.E.2d 725.) The Act creates no new duties, but simply articulates the common law duty to which the subsequently delineated immunities apply. (*Hannon v. Counihan* (1977), 54 Ill. App. 3d 509, 512, 369 N.E.2d 917.) The exceptions to immunity do not form the basis for creating a new duty upon which a plaintiff can rely because the Act simply provides an affirmative defense for a defendant municipality. Thus, the "duties" described in the exceptions to immunity found in the immunity provisions, and, specifically those that are found in section 3—103(a) regarding the execution of a plan, are derived from the basic common law duty articulated in section 3—102. As noted by our supreme court in *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 165, 456 N.E.2d 116, where there is no duty owing to the plaintiff under section 3—102 of the Act, no duty exists under section 3—103. Therefore, because the city of Chicago owes no common law duty to Ms. Horrell under the facts presented here, there can be no duty owing to Ms. Horrell under section 3—103(a) of the Act either.

Accordingly, we find that Ms. Horrell has failed to establish any common law or statutory duty owed to her by the city of Chicago, and inasmuch as there was no material issue of fact presented, the trial court properly granted the city's motion for summary judgment.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.