MARIANNE THOMPSON, Mother and Next Friend of James Thompson, a Minor, Plaintiff-Appellee, v. COOK COUNTY FOREST PRESERVE DISTRICT, Defendant-Appellant and Separate Appellee (Marianne Thompson, Indiv., Plaintiff and Separate Appellant; Thomas Allie, Defendant).

First District (6th Division) Nos. 1—91—0251, 1—91—0320 cons.

Opinion filed June 19, 1992.

Robert P. Sheridan, of Chicago, for Cook County Forest Preserve District.

Michael J. McArdle, Chartered, of Chicago, for Marianne Thompson.

JUSTICE McNAMARA delivered the opinion of the court:

These consolidated appeals arise from a negligence action filed in the circuit court of Cook County by plaintiff, Marianne Thompson, in her capacity as mother and next friend of her minor son James. Seven-year-old James was injured when struck by a car on June 12, 1983, at a forest preserve owned by defendant, the Cook County Forest Preserve District (the Forest Preserve). Defendant Thomas Allie, the driver of the automobile, is not involved in this appeal.

Count I of plaintiff's third amended complaint against the Forest Preserve alleged negligent failure to design the facility and to give adequate warnings; count II against the Forest Preserve made the same essential allegations characterizing it as willfully and wantonly negligent; count III against Allie alleged the negligent operation of his vehicle. The trial court denied the Forest Preserve's motion to dismiss plaintiff's third amended complaint. In July 1990, at the start of trial, the trial judge granted plaintiff's motion to file an additional count on her own behalf seeking damages for medical expenses under the expenses of family statute. (Ill. Rev. Stat. 1983, ch. 40, par. 1015.) After a trial, the jury returned a verdict against both defendants for $960,000 reduced by 25% for contributory negligence, bringing the final amount to $675,000 for James and $45,000 to plaintiff individually under the family expense statute. The trial court subsequently granted the Forest Preserve's motion for judgment notwithstanding the verdict on the family expense count, but denied all other relief requested by the Forest Preserve, and entered judgment for plaintiff in the amount of $675,000.

On appeal, the Forest Preserve argues that it owed plaintiff no duty under these facts, nor was any failure on its part shown to be a probable cause of James' injury. Plaintiff's appeal challenges the trial

court's order granting judgment notwithstanding the verdict to the Forest Preserve on the family expense statute.

The pertinent evidence adduced at trial is summarized below. The recreational area where the accident occurred served as a parking area and a roadway with two-way traffic; the rest rooms and the water pump were located on opposite sides of the parking area and roadway, but were not adjacent to one another; picnic tables were spread throughout the area. The accident occurred about five feet from the pump. At the time of the accident, there were no painted stripes indicating parking spaces. A 15-mile-per-hour speed limit sign was posted. The parties dispute whether the facility was a roadway or a parking lot.

James Thompson testified that he went to the forest preserve on the day of the accident with his friend, Brett Huntington, and Brett's father. He did not recall the accident itself, but remembered only being rushed to the hospital.

Nick Huntington testified for plaintiff that he took James, with his mother's permission, to the forest preserve with his seven-year-old son, Brett, and his three-year-old daughter, Jaime. He parked in the vicinity of a water pump and brought sandwiches to the adjacent picnic area. The rest rooms were across the roadway. He told the children to hold hands when they went to the rest room, and he watched them cross as he stood several feet from the curb where he played horseshoes. He saw the children return from the bathroom and approach the roadway. He heard an engine revving, and although the other children paused, James crossed the street. Huntington testified that he believed James "thought he could beat the truck."

Allie testified as an adverse witness that at about 5:45 p.m. on the day of the incident, he drove his "Toyota 4x4 truck" at 17 miles per hour through the parking area looking for someone that he knew. He saw the sign, which indicated a 15-mile-per-hour limit. He knew that there were toilet facilities, but did not see anyone crossing in front of him. Allie did not see James before he struck him; he saw the left side of James' face strike the right front fender of his truck above the wheel wall.

Plaintiff presented the expert testimony of Ronald Ruhl, a consulting engineer and professor of engineering at the University of Illinois. He reviewed documents regarding the accident and the facility's design, and visited the facility. He described the facility as a parking lot and roadway, and stated that the design presented hazards to pedestrians and vehicles. He testified that the facility needed a six-foot-wide pedestrian crossing, and pedestrian crossing signs. He stated

that the recreation area failed to demarcate a safe area to cross and that patrons crossed anywhere.

Lloyd Sonenthal, a consulting engineer, testified for the Forest Preserve and characterized the area as an "off-street parking facility." In his opinion, crosswalks were unnecessary because pedestrians came from nonspecific points. He stated that crosswalks are intended to funnel large groups of pedestrians from one clearly defined point to another. He believed that the signage was adequate, and that crosswalks would not have prevented the accident. He agreed that if the roadway was a street, a pedestrian crosswalk should have been provided.

The Forest Preserve contends that it owed no duty to plaintiff under these facts. To properly state a negligence cause of action, plaintiff must establish that defendant owed a duty of care, a breach of that duty, and an injury proximately caused by the breach. (*Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 570 N.E.2d 315.) Whether defendant owed plaintiff a duty of care is a question of law to be determined by the court. (*McLane v. Russell* (1989), 131 Ill. 2d 509, 546 N.E.2d 499.) Whether a legal duty exists requires consideration of foreseeability of possibility of harm, the burden of guarding against the injury and the consequence of placing that burden on the defendant. (*Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 566 N.E.2d 1365.) Absent a legal duty, plaintiff cannot recover in negligence as a matter of law. *Beal v. Kuptchian* (1987), 164 Ill. App. 3d 191, 517 N.E.2d 712.

In plaintiff's third amended complaint and before this court, plaintiff claims that the Forest Preserve owed plaintiff a duty under section 3—104(b) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (Ill. Rev. Stat. 1983, ch. 85, par. 3—104(b)). Count I of plaintiff's third amended complaint alleged that defendant breached this duty by:

"(a) Design[ing] a roadway without markings for traffic flow, where such markings were necessary to warn of this condition which endangered the safe movement of traffic, and which was not resonably [*sic*] apparent to a person in exercise of due care;

(b) Design[ing] and operat[ing] a parking area through which a roadway was maintained without pedestrian crosswalks ***;

(c) Operat[ing] a public roadway without speed limit designation ***;

(d) Fail[ing] to provide pedestrian crosswalks in the area of its toilet facilities when it knew, or should have known, that

members of the general public would cross the roadway to use such toilet facilities ***;

(e) Fail[ing] to install a warning sign of a dangerous condition which would warn operators of motor vehicles, *** of the likelihood of pedestrians crossing the roadway at or near its toilet facilities ***;

(f) Fail[ing] to design, install or operate a device warning of a dangerous condition such as ripple strips or speed bumps, which would warn and remind motor vehicle operators of the presence of pedestrians ***;

(g) Fail[ing] to consult with experts in the field of parking lot and roadway design when it knew, or should have known, expert assistance was necessary in the design, construction and maintenance of public roadways and parking areas."

Plaintiff alleged that James was injured as a proximate result of one or more of the above breaches by defendant. For the herein stated reasons, we reject plaintiff's reliance on section 3—104(b) and conclude that defendant owed plaintiff no duty to provide crosswalks or warnings under the Act or the common law.

The purpose of the Tort Immunity Act is to "protect local entities and public employees from liability arising from the operation of government." (Ill. Rev. Stat. 1989, ch. 85, par. 1—101.1(a).) The Act adds no new duties to those which existed prior to its codification (*Charpentier v. Chicago* (1986), 150 Ill. App. 3d 988, 502 N.E.2d 385), but rather continues common law duties respecting the liability of a municipality in the maintenance of its public ways. (*Warchol v. Chicago* (1979), 75 Ill. App. 3d 289, 393 N.E.2d 725.) Section 3—102(a) "articulates the common law duty to which the subsequently delineated immunities apply." (*Horrell v. Chicago* (1986), 145 Ill. App. 3d 428, 435, 495 N.E.2d 1259, 1264.) Section 3—102(a) provides as follows:

"(a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such condition." Ill. Rev. Stat. 1983, ch. 85, par. 3—102(a).

The applicable version of section 3—104(b) provides as follows:

"(b) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to provide traffic warning signals, signs, markings or other devices unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care." (Ill. Rev. Stat. 1983, ch. 85, par. 3—104(b).)

We note parenthetically that subsection (b) has since been deleted by a 1986 amendment, and that the current statute immunizes municipalities from liability for failing to post any traffic warnings at all. Ill. Rev. Stat. 1987, ch. 85, par. 3—104; *Newsome v. Thompson* (1990), 202 Ill. App. 3d 1074, 560 N.E.2d 974.

The "duties" referred to in section 3—104(b) and the other exceptions to the immunities provisions (Ill. Rev. Stat. 1983, ch. 85, pars. 3—103 to 3—108) all derive from the basic common law duty articulated in section 3—102. Our courts have repeatedly held that where defendant owes no duty under section 3—102 of the Act, no duty exists under the subsequent immunity sections either. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 456 N.E.2d 116; *Swett v. Village of Algonquin* (1988), 169 Ill. App. 3d 78, 523 N.E.2d 594; *Horrell v. Chicago*, 145 Ill. App. 3d 428, 495 N.E.2d 1259.) In *Curtis*, our supreme court wrote:

"[T]he duty of care described in section 3—103 derives from the more basic delineation of governmental duty found in section 3—102. In light of the absence of any duty owing to [plaintiff] under the latter section, no duty existed under the former." (*Curtis*, 98 Ill. 2d at 165, 456 N.E.2d at 120.)

In *Swett*, this court initially determined that no duty existed under section 3—102. This conclusion disposed of plaintiff's claims under sections 3—103 and 3—104 because if defendant owed no duty under 3—102 of the Act, "[it] could owe no duty to plaintiffs under the exceptions to immunity in sections 3—103 and 3—104, either." (*Swett*, 169 Ill. App. 3d at 95-96, 523 N.E.2d at 606.) This court reached a similar conclusion in *Horrell v. Chicago*, concluding that defendant could owe no duty to plaintiff under section 3—103 because defendant owed no duty to plaintiff under the common law. *Horrell*, 145 Ill. App. 3d at 435, 495 N.E.2d at 1264.

■ Under the holdings of *Curtis, Swett,* and *Horrell,* we reject plaintiff's claim that section 3—104(b) established defendant's duty to plaintiff. This authority instructs us that the threshold question for our inquiry is whether the Forest Preserve owed plaintiff a common

law duty, as codified in section 3—102, to provide a crosswalk, or a warning sign, device or marking to warn that pedestrians would be crossing the roadway. We conclude that no duty existed under these facts.

Under common law, local governments have a duty to maintain public property in a reasonably safe condition. (Ill. Rev. Stat. 1983, ch. 85, par. 3—102; *Curtis v. Cook*, 98 Ill. 2d 158, 456 N.E.2d 116.) It is well settled that a municipality is responsible for the negligent construction of public works and for the failure to maintain them, but has no duty for its negligence or refusal to undertake such improvements generally. (*West v. Kirkham* (1992), 147 Ill. 2d 1, 588 N.E.2d 1104; *Havens v. Harris Township* (1988), 175 Ill. App. 3d 768, 530 N.E.2d 284; *Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 522 N.E.2d 215; *Charpentier v. Chicago*, 150 Ill. App. 3d 988, 502 N.E.2d 385; *Harding v. Chicago Park District* (1975), 34 Ill. App. 3d 425, 339 N.E.2d 779.) A duty only arises when a public improvement is actually undertaken. (*Bowen v. City of Harvey* (1987), 164 Ill. App. 3d 637, 518 N.E.2d 203.) The law is also clear that if no duty to undertake the improvement exists in the first instance, then there is no corresponding need to warn of any alleged dangerous condition that results from the absence of the public improvement. *Risner v. City of Chicago* (1986), 150 Ill. App. 3d 827, 502 N.E.2d 357.

We find *Horrell* dispositive on defendant's duty to provide a crosswalk. In *Horrell*, this court determined that defendant owed plaintiff no statutory or common law duty to construct a crosswalk for a bus stop at a busy intersection. The court reasoned that the "traditional common law duty of local governments concerning public property is a duty to maintain that property in a reasonably safe condition," but does not require the creation of public improvements, such as crosswalks. (*Horrell*, 145 Ill. App. 3d at 432, 495 N.E.2d at 1262.) This court also rejected plaintiff's claim that a duty existed under section 3—103(a) of the Act regarding the execution of a plan, writing:

> "The Act creates no new duties, but simply articulates the common law duty to which the subsequently delineated duties apply. [Citation.] The exceptions to immunity do not form the basis for creating a new duty upon which a plaintiff can rely because the Act simply provides an affirmative defense for a defendant municipality. Thus, the 'duties' described in the exceptions to immunity found in the immunity provisions, and, specifically those that are found in section 3—103(a) regarding the execution of a plan, are derived from the basic common law

duty articulated in section 3—102. \*\*\* Therefore, because [defendant] owes no common law duty to [plaintiff] under the facts presented here, there can be no duty owing to [plaintiff] under section 3—103(a) of the Act either." (*Horrell*, 145 Ill. App. 3d at 435, 495 N.E.2d at 1264.)

(See also *Storen v. Chicago* (1940), 373 Ill. 530, 27 N.E.2d 53 (no duty to put in curbs); *Havens v. Harris Township*, 175 Ill. App. 3d 768, 530 N.E.2d 284 (no duty to widen roads, smooth gravel, erect signs or mow weeds); *Charpentier v. City of Chicago*, 150 Ill. App. 3d 988, 502 N.E.2d 385 (no duty to provide median barriers).) We also find instructive the line of cases which have held that a municipality has no duty to construct a sidewalk. (*Frakes v. Martin* (1987), 151 Ill. App. 3d 676, 503 N.E.2d 556; *Eddings v. Dundee Township Highway Commissioner* (1985), 135 Ill. App. 3d 190, 478 N.E.2d 888; *Harding v. Chicago Park District*, 34 Ill. App. 3d 425, 339 N.E.2d 779.) These and other cases have held that despite a municipality's duty to maintain its streets and sidewalks in a reasonably safe condition, a municipality has no duty to provide a safe place for pedestrians to walk along a street where no sidewalk exists, and no duty to safeguard pedestrians when they are walking on public streets. See also *Best v. Richert* (1979), 72 Ill. App. 3d 371, 389 N.E.2d 894; *American State Bank v. Cude* (1975), 30 Ill. App. 3d 206, 331 N.E.2d 825 (city owed no duty to pedestrian where city neither attempted, nor intended, to establish a pedestrian walkway across a highway); *Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473, 300 N.E.2d 590 (complaint based upon city's failure to provide a separate pedestrian walkway properly dismissed).

We find *Best v. Richert* analogous to this case. In *Best*, plaintiff sued the village to recover for the death of her two sons. The boys walked along a sidewalk until it ended, then were forced into the street when overgrown trees blocked further progress. The boys were struck by an automobile, and subsequently died from the injuries. As in this case, plaintiff there argued that the village was negligent under section 3—104(b) for failing to install crosswalks, warning devices, signs, markings or lights to warn that pedestrians would cross to get to the sidewalk. This court held that defendant had no duty to create a footpath where there was no sidewalk, and no duty to continue an existing sidewalk to the end of the block, writing as follows:

"Given that the collision occurred in a residential area, it would be reasonable to expect that pedestrians would be crossing the street at various locations and to expect motorists to anticipate this and drive accordingly. Therefore the Village, as a matter of

law, could not be negligent for failing to warn of such an obvious fact." (*Best*, 72 Ill. App. 3d at 375, 389 N.E.2d at 897.)

Nor is this a case where defendant failed to maintain a crosswalk or sidewalk that it had constructed, as in *Thorsen v. City of Chicago* (1979), 74 Ill. App. 3d 98, 392 N.E.2d 716. In *Thorsen*, this court held that the city owed a duty to maintain a sidewalk or otherwise provide a safe place to walk where the city initially provided a sidewalk but removed it in order to install a new water main. See also *Gleason v. City of Chicago* (1989), 190 Ill. App. 3d 1068, 547 N.E.2d 518; *West v. City of Hoopeston* (1986), 146 Ill. App. 3d 538, 497 N.E.2d 170.

Based upon the foregoing authority, we conclude that defendant owed no duty to plaintiff to construct a crosswalk. As in *Horrell*, the Forest Preserve chose not to provide a crosswalk even though it either knew or reasonably should have known that pedestrians would cross at the point where James was struck by the car. Because the common law duty to maintain property in a reasonably safe condition does not require the creation of public improvements such as crosswalks and sidewalks, we find that the Forest Preserve owed no duty to construct a sidewalk. Moreover, based upon the foregoing authority, we do not believe that the characterization of the facility as a parking lot or a roadway alters this result.

■ Plaintiff also alleges that defendant owed plaintiff a duty under section 3—104(b) to provide warning devices, signs, or markings to warn motorists of crossing pedestrians. Plaintiff characterizes this as a "dangerous condition" which invokes a duty under section 3—104(b). Because we concluded above that defendant had no duty to plaintiff to provide a safe place to cross, it follows that no duty existed under section 3—103 or 3—104 for failing to warn of this allegedly unreasonably dangerous condition. See *Curtis v. Cook*, 98 Ill. 2d 158, 456 N.E.2d 116; *Risner v. Chicago*, 150 Ill. App. 3d 827, 502 N.E.2d 357.

A municipality's general duty to maintain its property in a reasonably safe condition (Ill. Rev. Stat. 1983, ch. 85, par. 3—102), and its duty to maintain public improvements, once undertaken, in a reasonably safe manner, is of no avail to plaintiff. Notwithstanding these duties, section 3—104(a) of the Act explicitly absolves municipalities of liability for the specific acts of negligence alleged in plaintiff's third amended complaint. Section 3—104(a) of the Act provides as follows:

> "(a) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to *initially* provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive

roadway markings or any other traffic regulating signs." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 85, par. 3—104(a).) Under this section, the Forest Preserve is immunized for failing to initially provide warning signs of any kind, including the various types alleged in plaintiff's complaint. Notably, plaintiff here does not allege that the Forest Preserve negligently maintained its posted signs or negligently placed signs. *Cf. Castorena v. Browning-Ferris Industries* (1991), 217 Ill. App. 3d 328, 577 N.E.2d 185, *appeal denied with order* (1992), 144 Ill. 2d 631, 588 N.E.2d 1192; *Parsons v. Carbondale Township* (1991), 217 Ill. App. 3d 637, 577 N.E.2d 779; *Smith v. White* (1989), 191 Ill. App. 3d 569, 548 N.E.2d 19.

Neither *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213, nor *DiOrio v. City of Chicago* (1981), 99 Ill. App. 3d 1047, 425 N.E.2d 1223, cited by plaintiff, requires a different result. In *Janssen,* our supreme court determined that the municipality owed a duty to warn motorists of a hazard caused by a projecting portion of a traffic island. The municipality argued that it had no duty under section 3—104(a) to post a warning sign. According to the *Janssen* court, however, the duty arose from the long-standing government obligation to maintain public highways in a safe condition. The court noted that this duty had been "codified" in section 3—104(b) to warn motorists of dangerous conditions. (*Janssen,* 79 Ill. 2d at 450, 404 N.E.2d at 220.) *DiOrio* similarly held that a municipality had a duty to warn motorists of a low clearance at a railroad overpass even though the hazard was not within the municipality's control. This court found that Rule 606 of the Illinois Commerce Commission General Order No. 138 (ICC General Order No. 138, Rule 606 (rev. 1973) obligated the city to maintain a clearance sign. The court rejected defendant's claim that section 3—104(a) immunized it from liability.

Initially, we note that neither the *Janssen* nor *DiOrio* court determined that the Act established a duty to warn. The *DiOrio* court relied upon a rule of the Illinois Commerce Commission which established a duty to warn of the low clearance. Although the *Janssen* court found that a duty to warn had been *codified* under section 3—104(b), it did not find that such duty *arose* under the Tort Immunity Act. (*Dinges v. Gabardi* (1990), 202 Ill. App. 3d 732, 560 N.E.2d 21.) In any event, this case is factually distinguishable. In *Janssen* and *DiOrio,* liability to warn was based upon physical obstructions which created hazardous conditions to the roadway itself, thereby endangering normal travel. In each case, the defendant acted to create the condition. Here, by contrast, no permanent physical obstruction or other condition of the road was unreasonably dangerous. The simultaneous

presence of pedestrians and cars at the Forest Preserve's facility in itself was not unreasonably dangerous. The Forest Preserve could reasonably expect drivers to watch for crossing pedestrians, and pedestrians to check before entering. Moreover, unlike *Janssen* and *DiOrio*, plaintiff charges the Forest Preserve with the failure to act. In our view, the concealed hazard of a low overpass or a 5½-foot concrete island which protrudes into the roadway is not analogous to the hazard of crossing pedestrians, which is "reasonably apparent" to motorists in the exercise of due care. (Ill. Rev. Stat. 1983, ch. 85, par. 3—104(b); see *Best v. Richert*, 72 Ill. App. 3d 371, 389 N.E.2d 894.) Since no condition on the Forest Preserve's land posed a danger absent the negligent act of either plaintiff or the motorist, we find *Janssen* and *DiOrio* inapposite. To apply their holdings here would result in an unwarranted and expansive interpretation of the Tort Immunity Act.

Based upon the foregoing, we conclude that the Forest Preserve owed plaintiff no duty as a matter of law, and neither count I nor count II, which allege ordinary negligence and wilful and wanton misconduct, respectively, properly state a cause of action. Because we so conclude, we need not consider the Forest Preserve's claims that sections 3—106 and 3—107 immunized it from liability. We accordingly reverse the judgment against the Forest Preserve.

■ The sole issue raised by plaintiff's appeal is whether the trial court properly granted the Forest Preserve's motion for judgment notwithstanding the verdict on the family expense count. In granting this motion, the trial court determined that, based upon *Swider v. Holy Cross Hospital* (1986), 146 Ill. App. 3d 740, 497 N.E.2d 474, plaintiff's cause of action for medical expenses was barred by the statute of limitations. In light of our determination that the Forest Preserve owed no duty to plaintiff under these facts, it follows that plaintiff's cause of action against it under the family expense statute must also fail. Although we need not address the merits of the parties' arguments, we note our agreement with the trial court that *Swider* controls under these facts. The *Swider* court held that under the applicable statutes, the tolling provision which applied to a minor's cause of action (Ill. Rev. Stat. 1983, ch. 110, par. 3—211) did not apply to a derivative claim for a cause of action which accrued in 1983. Moreover, the 1986 amendment, which applies the tolling provision to a derivative action, was not effective until November 1987, well after this cause of action accrued. (Ill. Rev. Stat. 1987, ch. 110, par. 13—203.) This court's recent decision in *Evangelou v. Children's Memorial Hospital* (1992), 227 Ill. App. 3d 909, also supports this conclu-

sion. We believe, therefore, that the trial court properly relied upon *Swider* and refused to apply the tolling provision in this case. We accordingly affirm the order of the circuit court of Cook County granting the Forest Preserve judgment notwithstanding the verdict on plaintiff's claim under the family expense statute.

Judgment in No. 1—91—0251 reversed; judgment in No. 1—91—0320 affirmed.

EGAN, P.J., and RAKOWSKI, J., concur.