RICHARD HEINTZ *et al.*, Petitioners-Appellants, *v.* RICHARD J. VORWERK *et al.*, Respondents-Appellees.

Third District    No. 82—176

Opinion filed April 14, 1983.—Rehearing denied August 2, 1983.

STOUDER, J., dissenting.

Robert I. Auler, of Auler Law Offices, and Kenneth L. Halvachs, both of Urbana, for appellants.

James E. Garrison and William V. Kozel, both of Garrison, Fabrizio and Hanson, Ltd., of Joliet, for appellee.

JUSTICE ALLOY delivered the opinion of the court:

This appeal arises out of an automobile collision at the intersection of River Street and Indiana Avenue in Kankakee, Illinois. The trial court granted the city of Kankakee's motion for summary judgment, and the plaintiff appeals. The plaintiffs and the city are the only parties to this appeal.

The plaintiff was driving east on River Street, a four-lane street with traffic flowing in both directions. Plaintiff was in the inside lane of the eastbound traffic. As he passed the intersection, the defendant Vorwerk, traveling southbound in the left lane of Indiana Avenue, collided with the plaintiff as he made a left turn onto River Street. The intersection of Indiana Avenue and River Street is controlled by three-way stop signs: traffic in all directions except River Street eastbound must stop. Indiana Avenue is a one-way street directed southbound. Although it continues south of River Street, it quickly becomes a dead end.

The plaintiffs' allegation against the city focuses upon the control of the intersection. Although the plaintiffs alleged a violation of the city's duty to use due care in the construction, maintenance and operation of the intersection, this appeal concerns only the city's duty to warn approaching motorists of the dangerous intersection ahead. Specifically, the plaintiff contends the city had a duty to warn southbound motorists on Indiana Avenue that eastbound traffic on River Street does not stop.

The city moved for summary judgment in its favor. Relying upon two agreements between the State of Illinois and the city of Kankakee, the city argued that it had no maintenance jurisdiction over the intersection. In particular, the city argues it had no authority or responsibility for traffic warning or control signs.

The two agreements concern the construction and maintenance of the intersection and Indiana Avenue. In 1970, the State and the city contracted for the reconstruction of Indiana Avenue and River Street, including the intersection in which the collision occurred. Under the terms of the agreement, the State was to widen and improve both of these streets. On Indiana Avenue, the State undertook to construct two traffic lanes and two parking lanes. The city agreed to reimburse the State for the costs of constructing the parking lanes. The agreement specifically required the State to "maintain or cause to be maintained" the two through lanes of Indiana Avenue and all four lanes of River Street. The city agreed to maintain the parking lanes of Indiana Avenue.

In 1977, the State and the city executed another agreement. In this agreement, in force at the time of the collision, the city agreed to "operate and maintain" River Street and Indiana Avenue. The agreement states that "operation and maintenance includes but is not limited to all routine surface and pothole repairs, temporary full-depth patches, expansion bump removal on all bituminous surfaces, crack and joint sealing, cleaning and litter pickup, snow and ice control and all other routine operational services." The State agreed to pay the city $14,390.04 in consideration for satisfactory performance of the services. This is a form contract of one-year duration and, apparently, was renewed annually by the parties.

In its motion for summary judgment, the city argued the State is responsible for warning motorists that eastbound traffic on River Street does not stop, because the State has maintenance jurisdiction over the intersection. The plaintiff argued the 1977 agreement vested maintenance jurisdiction in the city. Furthermore, relying upon *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213, the

plaintiff contended the city still had a duty to warn motorists traveling south on Indiana Avenue that the approaching intersection was hazardous, even if the intersection itself was in the State's maintenance jurisdiction. The plaintiff based his argument on the jurisdiction the city has over a portion of Indiana Avenue under the 1970 agreement. The city contends, however, that, not only does it not have jurisdiction over the intersection, it does not have jurisdiction over the traveled portion of Indiana Avenue. After reviewing the agreements by the city and the State, the trial court agreed with the city and ordered a summary judgment in its favor.

A party is entitled to summary judgment when there is no genuine issue of material fact and when the movant is entitled to judgment as a matter of law. (*Kubik v. CNA Financial Corp.* (1981), 96 Ill. App. 3d 715, 422 N.E.2d 1.) At the outset, we note there is no dispute that the intersection is hazardous. The sole controversy concerns the city's maintenance jurisdiction over the streets and the intersection.

The plaintiff first complains that the trial court improperly addressed the question of jurisdiction over Indiana Avenue. As the plaintiff notes, the motion for summary judgment asks the court to determine the city's jurisdiction over the intersection, not Indiana Avenue. More generally, however, the motion asks the court to award summary judgment in its favor. In their briefs and arguments to the trial court, both parties addressed the issue of maintenance jurisdiction over Indiana Avenue. The trial court, therefore, could properly consider this issue in its determination of the motion for summary judgment.

Turning to the merits, we note there are two questions here, though they are interrelated: Does the city have maintenance jurisdiction over the intersection? If not, does the city have maintenance jurisdiction over Indiana Avenue, directly north of the intersection? If the answer to the former question is in the negative, an affirmative answer to the latter question may still impose a duty upon the city to warn drivers of the danger. The duty is articulated in *Janssen,* which held that section 11—304 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—304), imposed a duty "on local authorities to warn motorists of those hazards which are incident to that portion of a highway which remains under local maintenance jurisdiction." *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 448.

Resolution of both of these questions requires an interpretation of the agreements between the city and the State. The plaintiff strenuously argues that *Janssen* is directly on point and controls this ap-

peal. The city cites no authority in support of its arguments, but seeks to distinguish *Janssen*.

In *Janssen*, the city of Springfield and the State agreed to construct a 52-foot paved north-south road—Fifth Street—up to the southern boundary—Stanford Avenue, an east-west street—of the city. The northern edge of Stanford Avenue constituted the city's boundary. The intersection of these two roads, therefore, was outside the city. The city and the State also agreed that, as long as Fifth Street was a State highway, the State would maintain the center 24 feet of the road and the city would maintain the remaining 28 feet of roadway. The State, on its own, continued the construction and paving of Fifth Street south of Stanford Avenue. The State also constructed the intersection of Fifth Street and Stanford Avenue. Unfortunately, the road narrowed at the intersection, producing a traffic island which, in effect, protruded into the left lane of traffic traveling southbound on Fifth Street. The plaintiff sustained serious injuries when his motorcycle, traveling in this lane, unexpectedly struck the traffic island. There were no warning signs to caution motorists that the road narrowed.

After the construction was completed, the State made annual agreements with the city for the maintenance of the center 24 feet of Fifth Street. The city agreed to repair and maintain this portion of the road, and the State agreed to reimburse the city. In 1972, the city annexed an area south of Stanford Avenue, including the intersection.

The supreme court, characterizing the contracts between the parties, stated that a jury could reasonably conclude that the city had jurisdiction and control of the outer 28 feet of roadway and that the State had jurisdiction and control of the center 24 feet and subsequently contracted with the city for services on this portion of the street. Noting that the traffic island blocked the continuation of Fifth Street's left lane, constituting a hazard to motorists using the city-controlled part of the road, the court concluded that section 11—304 of the Illinois Vehicle Code imposed a duty upon the city to warn motorists of that hazard.

In the case at bar, the city has jurisdiction over the parking lanes of Indiana Avenue. This fact, however, does not automatically create a duty to warn motorists of the hazardous intersection ahead. In *Janssen*, the actual hazard—a traffic island—protruded into the continuation of a lane which, regardless of any maintenance agreement or contract, the city already owned and controlled. The island presented a danger incident to that portion of a road which remained under local maintenance jurisdiction. (79 Ill. 2d 435, 448.) In the instant

case, the intersection poses no danger to motorists using the portion of the street—the parking lanes—which remained under the city's control. If the city does have a duty to warn motorists of the dangerous intersection, that obligation must be the result of the 1977 maintenance agreement between the city and the State.

The question becomes, therefore, whether an agreement between the city and the State, in which the city agrees to maintain a road in exchange for a fee, gives the municipality maintenance jurisdiction over that road within the meaning of section 11—304. *Janssen* does not answer this question. The fact that the city, in *Janssen*, agreed to maintain the center 24 feet was irrelevant to the court's determination. As we already noted, the traffic island was a hazard only to motorists using the outer lanes, which the city already controlled. Neither party to this appeal cites authority on this point and we can find none.

In response to this question, the city argues that the maintenance agreements are no more than the contracts for services in consideration of a fee. Furthermore, the fact that the State is contracting for maintenance services demonstrates that it has authority and control over the traveled portion of the street and the intersection. Viewed as mere contracts for services, the city argues, the agreements cannot confer maintenance jurisdiction.

We agree with the city. The State designed and constructed the intersection and Indiana Avenue. The fact that the city reimbursed the State for the improvement of the parking lane on Indiana Avenue does not give the city any maintenance jurisdiction over the traveled portion of that street or the intersection. Moreover, the maintenance agreements specifically limit the city's rights and responsibilities. The agreements do not refer to any right of the city to control or exercise any jurisdiction over the streets. On the contrary, the construction agreement stipulates the State's obligation to maintain the roads and the maintenance agreement details the services the city is to perform and the fee it is to be paid. The city is even free to cancel the maintenance agreement and to refuse to renew the contract. If the city had maintenance jurisdiction, it could not so easily avoid its responsibilities under the Illinois Vehicle Code.

We hold, therefore, that an agreement between a municipality and the State, to repair and maintain streets under the jurisdiction and control of the State, does not confer maintenance jurisdiction upon the locality within the meaning of section 11—304. The city, in conclusion, had no duty to warn the plaintiff that he was approaching a dangerous intersection. The trial court properly entered summary

judgment of the city.

The judgment of the circuit court of Kankakee County is affirmed.

BARRY, P.J., concurs.

JUSTICE STOUDER, dissenting:

I dissent from the majority view that the city of Kankakee had no duty to warn the individual defendant, Richard Vorwerk, that he was approaching a dangerous intersection.

The primary case relied upon by the plaintiffs in support of their position is *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213, which is summarized in the majority opinion. Contrary to the view of the majority, I believe that the reasoning of the holding in *Janssen* can be applied directly to the case at hand in support of the plaintiffs' argument that the city of Kankakee had a duty to warn the individual defendant of an approaching dangerous intersection.

The court in *Janssen* stated that section 11—304 of the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 11—304), requiring local authorities to post signs to regulate, warn or guide traffic on highways under their maintenance jurisdiction, "imposes an obligation on local authorities to warn motorists of those hazards which are incident to that portion of a highway which remains under local maintenance jurisdiction." (*Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213, 219.) The court further stated that the traffic island projecting into the continuation of the outer part of the street on which the plaintiff was traveling presented a hazard to motorists using the part of the street, a part which was within the original maintenance jurisdiction of the city of Springfield (the outer 14 feet of pavement on each side of the road).

The city of Springfield was, therefore, under a duty to warn motorists of this approaching hazard even if the hazard itself, the traffic island, was not within a city controlled part of the street. I agree with the majority and the city of Kankakee that the *Janssen* court's decision was not premised upon the fact that the city had entered into a subsequent maintenance contract with the State in which the city agreed to maintain that portion of the subject street the State had originally promised to maintain (the center 24 feet of pavement) in return for reimbursement of expenses by the State, resulting in actual maintenance of the entire street by the city. Contrary to the argument made by the plaintiffs, the existence of the subsequent maintenance contract was not relied upon by the *Janssen* court to support its holding. Therefore, the fact that the city of Kankakee entered into

a subsequent maintenance contract with the State of Illinois in which the city ultimately bore responsibility for the maintenance of the entire street in question is not a consideration in my opinion.

Here, we have a situation which is quite similar to that presented in *Janssen*. An individual defendant was traveling on a street in the city of Kankakee which was controlled jointly by the city and by the State in that the city had maintenance jurisdiction over the parking lanes on either side of the road and the State had maintenance jurisdiction over the traffic lanes of the street. The plaintiffs have stated that the parking lane on the left side of the street becomes an area available for turning as it approaches the allegedly dangerous intersection. Nothing in the complaint would preclude the possibility of producing evidence at trial showing that the defendant driver turned left into the intersection from this turning area over which the city had maintenance jurisdiction. This area, controlled by the city of Kankakee, would be immediately incident to an allegedly hazardous intersection, and, therefore, subject to the reasoning set forth in *Janssen*, namely, that the city had a duty to warn motorists of hazards incident to that portion of the roadway under the maintenance jurisdiction and, therefore, control of the local authorities.

Based upon by interpretation of *Janssen* and the facts presented in the case at hand, I would reverse the decision of the trial court granting the city of Kankakee's motion for summary judgment.