JANICE ROSS, Special Adm'r of the Estate of Samantha Ross, *et al.*, Deceased, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee (Ford Motor Company, Defendant).—VIRGINIA CLEMENTS, Indiv. and as Adm'r of the Estate of Lenore Clements, Deceased, *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee (Ford Motor Company, Defendant).

First District (5th Division)   Nos. 87—0389, 87—0509 cons.

Opinion filed March 11, 1988.

Gerald M. Sachs & Associates, Ltd. (Gregory R. Sun and Thomas M. Klein, of counsel), for appellant Janice Ross.

Grant and Schencker, P.C., of Chicago (Bennett R. Klasky, of counsel), for other appellants.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Lynn K. Mitchell, Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs Janice Ross (Ross) and Virginia Clements (Clements), in a consolidated action, filed separate complaints against defendants Ford Motor Company and the City of Chicago (City) following the deaths of plaintiffs' decedents in an automobile collision. Plaintiffs appeal the dismissal below, as to defendant City, of both complaints under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) pursuant to a finding by the trial court under Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)).

On September 3, 1984, an automobile containing plaintiff Clements' decedent, traveling south at approximately 1800 North Lake Shore Drive, crossed over the roadway into oncoming traffic and collided head-on with an automobile containing plaintiff Ross' decedents. Both plaintiffs filed complaints, as amended, against defendant City alleging wrongful death and survival actions in counts I and II, respectively, arising out of the accident. The gravamen of each count being that, although with notice of numerous "crossover" collisions at the site of the accident, defendant City failed to erect a median barrier of adequate dimensions, as it had provided elsewhere on Lake Shore Drive, to prevent vehicles from crossing over the roadway into

oncoming traffic. Collectively, the counts alleged that such duty arose either in accordance with common law or contractually pursuant to a written agreement with the State of Illinois to "operate and maintain" portions of Lake Shore Drive, including the location where the accident occurred.

In addition to the above, plaintiff Clements also brought wrongful death and survival counts against defendant City based on provisions of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1985, ch. 95½, par. 1—100 *et seq.*). Counts III and IV of Clements' complaint alleged that various acts and omissions of defendant City constituted violations of the Code with respect to the maintenance of adequate traffic control devices, including the failure to erect a barrier as outlined above. We note here that the parties, in both the motion and hearing thereon below, and now on appeal, concede that the disputed allegations concern only the failure to erect a median barrier.

In lieu of answers, defendant City filed a motion to dismiss both complaints pursuant to section 2—615 of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—615.) The motion asserted that no duty existed to provide median barriers and that the failure to erect such a barrier was a discretionary governmental decision protected under provisions of the Local Governmental and Governmental Employees Tort Immunity Act. (Ill. Rev. Stat. 1985, ch. 85, par. 1—101 *et seq.*) On January 13, 1987, the trial court entered an order granting defendant City's motion. This appeal followed.

OPINION

■ On review of dismissal of an action under section 2—615 of the Code of Civil Procedure, the appellate court applies the same standards with respect to the pleadings as the court below which initially heard the motion. The court must determine whether, interpreting the allegations of the complaint in a light most favorable to the plaintiff, it appears that no set of facts could be proven under the pleadings which would entitle the plaintiff to relief. (*Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 411 N.E.2d 1067.) The court is to be concerned only with questions of law. (*Jones v. Eagle II* (1981), 99 Ill. App. 3d 64, 424 N.E.2d 1253.) The court tests the sufficiency of the complaint by ascertaining whether the essential elements of a cause of action exist. *Beese v. National Bank* (1980), 82 Ill. App. 3d 932, 403 N.E.2d 595.

■ Plaintiff, in a case involving negligence, such as the case at bar, must set forth the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of the duty. (*Horrell*

*v. City of Chicago* (1986), 145 Ill. App. 3d 428, 495 N.E.2d 1259.) The question of duty is one of law. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 456 N.E.2d 116.) Thus, the issue before the court is whether defendant City had a duty arising either by operation of common law, under contract, or by statute, as alleged in the collective counts of plaintiffs' complaints, to provide an adequate median barrier on Lake Shore Drive, at the location of the accident, to prevent a vehicle from crossing over the roadway into lanes of on-coming traffic.

■ The liability of a municipal corporation in Illinois is governed by the Local Governmental and Governmental Employees Tort Immunity Act. (Ill. Rev. Stat. 1985, ch. 85, par. 1–101 *et seq.*) However, that act has essentially continued common law duties respecting the liability of a municipality in the maintenance of its public ways. (*Warchol v. City of Chicago* (1979), 75 Ill. App. 3d 289, 393 N.E.2d 725.) The Act adds no new duties to those which existed prior to its codification. *Charpentier v. City of Chicago* (1986), 150 Ill. App. 3d 988, 502 N.E.2d 385.

■ Under common law, it is well settled that a municipality is responsible for the negligent construction of public works and for the failure to maintain them, but has no duty, and, therefore, is not liable for its negligence or refusal to undertake such improvements initially. (*Resnik v. Michaels* (1964), 52 Ill. App. 2d 107, 201 N.E.2d 769.) Generally, until the City acts, it cannot be held liable. (*Johnston v. City of East Moline* (1950), 405 Ill. 460, 91 N.E.2d 401.) However, even where it undertakes to act in some fashion, a municipality is not considered to be an insurer against all accidents occurring on the public way; rather, a municipality is required to maintain its streets in a reasonably safe condition for the amount and kind of travel which may fairly be expected on them. (*Warchol v. City of Chicago* (1979), 75 Ill. App. 3d 289, 393 N.E.2d 725.) Liability arises only when the undertaken improvement, itself, creates an unreasonably dangerous condition. *Harding v. Chicago Park District* (1975), 34 Ill. App. 3d 425, 339 N.E.2d 779.

■ Further, the duty to maintain can only logically be as broad as that encompassed by the definition of the term. "Maintain" is "variously defined as acts of repairs and other acts to prevent a decline, lapse, or cessation from existing state or condition, *** [to] keep in repair; keep up; preserve." (Black's Law Dictionary 859 (5th ed. 1971).) Maintenance involves preserving the roadway, keeping it up, not permitting it to fall into a state of disrepair, and involves, for example, the filling of potholes, or repairing deteriorated portions of the roadway. *Harding*, 34 Ill. App. 3d at 429, 339 N.E.2d at 782.

In the case at bar, plaintiffs do not allege that the deaths of plaintiffs' decedents were caused by a state of disrepair or deterioration of the roadway, or for any other failure of maintenance, as that term is commonly understood. Rather, plaintiffs base their complaints on the failure of defendant City to undertake erection of a median barrier on a portion of Lake Shore Drive where no median barrier exists. Both complaints allege that defendant City, in its assumption of maintenance of that portion of Lake Shore Drive where the accident at issue occurred, and with notice of previous "crossover" collisions at that location, failed to erect a median barrier to prevent vehicle "crossovers" as it so provided elsewhere on the roadway. In addition, the complaint of plaintiff Ross alleges that the City negligently erected a median "strip" at the location of the roadway in issue, rather than an adequate median barrier.

On appeal, both plaintiffs focus on the issue of defendant City's undertaken action to provide a median "strip" as opposed to a median barrier. Plaintiffs argue the median "strip" was insufficient to operate as a physical restraint to prevent "crossover" collisions. Plaintiff Ross further argues that the court below, in the determination of the motion before it, improperly considered the statements of counsel for defendant City that the improvement provided was intended only as a "fancy lane divider," not as a physical restraint. Plaintiff Ross contends, in any event, that the act of "raising that divider eight to ten inches" also created an unreasonably dangerous condition of the subject roadway.

As we have already noted, we are confined, on the review of the dismissal of a complaint under section 2—615, to determining whether the complaints, as alleged, set out a recognized cause of action in Illinois. In this determination we are to apply the same standards on review of the pleadings as those which are to be initially applied below. To such extent, we need not be concerned with what was or was not properly considered by the trial court in the disposition of the motion, for we have before us the same pleadings as below and are obligated only to determine whether a cause of action has been, or can be, set out therein.

Moreover, we are confined solely to those allegations raised in the pleadings. We note that neither of plaintiffs' complaints alleges the intended purpose of the median "strip" provided or offers any factual assertions regarding its height in relation to creating a danger on the roadway. As set out above, the complaints allege only that the failure to erect an adequate median barrier, as provided elsewhere on the roadway, in place of the median "strip," rendered that portion of

Lake Shore Drive, where "crossover" collisions were foreseeable, unreasonably dangerous.

■ We cannot agree with plaintiffs that defendant City was under a common law duty to erect a median barrier. A municipality has never been intended under our legal system as a principal source of social protection. (*Deren v. City of Carbondale* (1973), 13 Ill. App. 3d 473, 300 N.E.2d 590.) We are unwilling to extend the defendant City's duty as a municipality, as outlined above, to include the erection of a public improvement simply because such was elsewhere provided, and because it would be expedient to do so at the particular location involved as well. It is enough that municipalities exercise ordinary care with respect to those undertakings they have selected. *Deren,* 13 Ill. App. 3d at 478, 300 N.E.2d at 593.

In *Charpentier v. City of Chicago* (1986), 150 Ill. App. 3d 988, 502 N.E.2d 385, we recently held that the City had no duty to provide median barriers in a case involving a "crossover" collision at a location on South Lake Shore Drive where only a double yellow line separated northbound and southbound lanes of traffic. Although the instant action presents an added dimension, since it is alleged that a median "strip" was provided by defendant City, the distinction warrants no different conclusion. As stated above, a municipal corporation is liable only when it acts to provide public improvements which directly render the street, itself, defective such that travel thereon becomes unreasonably dangerous. (*Harding v. Chicago Park District* (1975), 34 Ill. App. 3d 425, 399 N.E.2d 779.) Providing a median "strip" rather than a median barrier did not render the subject portion of Lake Shore Drive physically defective or unsafe for the normal course of travel for which the roadway was intended.

The instant action is therefore distinguishable from cases principally relied upon by plaintiffs on appeal. In each of those cases, the action of the defendant created a hazardous condition to the roadway, itself, endangering normal travel or foreseeable deviations therefrom. *Michalak v. County of La Salle* (1984), 121 Ill. App. 3d 574, 459 N.E.2d 1131 (end of guardrail left exposed); *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, 251 N.E.2d 277 (placement of streetlight caused glare); *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213 (portion of traffic island projected into traffic lane).

■ Nor can we agree with plaintiffs' assertions that a collision of a type which occurred in the case at bar was foreseeable. It might be theoretically foreseeable that "crossover" accidents could occur at 1800 North Lake Shore Drive in the same sense that such accidents

are possible on any two-way traffic thoroughfare unimproved with features designed specifically to prevent such collisions. However, that foreseeability which contributes to the establishment of a legal duty, in cases such as that before the court, must be tempered by the amount of deviation from the ordinary course of travel. A duty arises only where a reasonably prudent person could have foreseen as likely the events which did transpire. (*Michalak v. County of La Salle* (1984), 121 Ill. App. 3d 574, 459 N.E.2d 1131.) We cannot say that the accident involved in the instant case was a type of reasonably foreseeable occurrence for which plaintiffs could base any liability against defendant City, as alleged in their complaints. Therefore, plaintiffs' complaints fail to state a cause of action based on a duty at common law to erect a median barrier.

We next consider whether defendant City was obligated to provide a median barrier as part of its contractual obligation to the State to maintain Lake Shore Drive, including that portion where the accident in issue occurred. The language of the agreement specifically requires defendant City to "operate and maintain" the streets included under the agreement. "Operate and maintain" includes:

> "[A]ll routine surface and pothole repairs, temporary full-depth patches, expansion bump removal on bituminous surfaces, crack and joint sealing, cleaning and litter pickup, snow and ice control and all other routine operational services. Median maintenance, when applicable, shall consist of sweeping, litter pickup, mowing, and routine surface repairs."

The agreement clearly obligates the defendant City only to keep the roadway in a state of good repair. Nothing in the language of the agreement implies that defendant City's duty thereunder is more expansive than is contemplated by the definition of maintenance as that term is commonly understood. Therefore, plaintiffs' complaints fail to state a cause of action based on any contractual duty to erect a median barrier.

Finally, we turn to whether there exists a statutory basis for establishing that defendant City was under a duty to improve the roadway with a median barrier. In counts III and IV of her complaint, plaintiff Clements alleges that the defendant City's failure to erect an adequate median barrier to prevent vehicles from crossing the roadway into oncoming lanes of traffic was a violation of defendant City's duty under the Illinois Vehicle Code. (Ill. Rev. Stat. 1985, ch. 95½, par. 1—100 *et seq.*) Specifically, plaintiff Clements alleges defendant City's failure to erect a median barrier was a violation of section 11—304 of the Code, which provides:

"Local authorities and road district highway commissioners in their respective maintenance jurisdiction shall place and maintain such traffic-control devices upon highways under their maintenance jurisdiction as are required to indicate and carry out the provisions of this Chapter, and local traffic ordinances or to regulate, warn, or guide traffic. All such traffic control devices shall conform to the State Manual and Specifications and shall be justified by traffic warrants stated in the Manual. Placement of traffic-control devices on township or road district roads also shall be subject to the written approval of the County Superintendent of Highways." Ill. Rev. Stat. 1985, ch. 95½, par. 11—304.

Plaintiff Clements argues that median barriers have been incorporated by the Illinois Manual on Uniform Traffic Control Devices for Streets and Highways, referred to in the section above, as a regulatory traffic control device for the specific purpose of providing an insulating area between opposing streams of traffic. Plaintiff reasons that defendant City had a duty under section 11—304 to fulfill the intended purpose of the Code by erecting a suitable barrier to serve as a physical restraint between opposing lanes of traffic.

Plaintiff's reasoning ignores the clear language of the agreement between defendant City and the State in implying that the subject portion of Lake Shore Drive is within the maintenance jurisdiction of the municipality, thus possibly requiring the placement of a median barrier under section 11—304. A service agreement between a municipality and the State which only obligates the municipality to repair and maintain, for a fee, streets under jurisdiction and control of the State, as exists in the instant action, does not confer maintenance jurisdiction upon the locality within the meaning of section 11—304. (*Heintz v. Vorwerk* (1983), 115 Ill. App. 3d 899, 451 N.E.2d 551.) Therefore, defendant City is under no duty pursuant to section 11—304 of the Code to erect a median barrier.

For the above-stated reasons, the decision of the circuit court dismissing plaintiffs' complaints as to defendant City is affirmed.

Affirmed.

SULLIVAN and MURRAY, JJ., concur.