1-95-2242)
1-95-2311) Cons.

LISA O'BRIEN, as Special Administrator )
of the Estate of MARIA O'BRIEN, )
deceased, and LISA O'BRIEN, ) Appeal from the 
individually, ) Circuit Court of
 ) Cook County.
 Plaintiff-Appellant, ) 
 )
 v. ) 
 ) 
CITY OF CHICAGO, a Municipal ) 
Corporation, and JAMES GLENN, ) 
 ) 
 Defendants-Appellees, ) 
 )
________________________________________) 
 )
EDWARD O'BRIEN, individually, )
 )
 Plaintiff-Appellant, )
 ) 
 v. )
 ) Honorable 
CITY OF CHICAGO, a Municipal ) Edward R. Burr,
Corporation, and JAMES GLENN, ) Judge Presiding.
 )
 Defendants-Appellees. )



 PRESIDING JUSTICE HARTMAN delivered the opinion of the court:
 Plaintiffs Edward and Lisa O'Brien filed a wrongful death
action against defendant, City of Chicago (City), after an auto
accident on Lake Shore Drive (the Drive) killed their mother, Maria
O'Brien. Plaintiffs claim the City negligently failed to install
median guard rails on the Drive, proximately causing the accident. 
Lisa O'Brien appeals from the circuit court's orders dismissing her
sixth amended complaint and denying her leave to file a seventh and
eighth amended complaints. Edward O'Brien appeals the circuit
court's dismissal of his second amended complaint, which had
adopted Lisa's proposed allegations.
 On November 11, 1986, Maria O'Brien was driving north on the
Drive, with Lisa in the passenger seat. James Glenn, the other
driver, was driving southbound on the Drive. Near 2700 north,
Glenn attempted to pass another car, but lost control, swerved to
the right side of the road, bounced off a guard rail, swerved to
the left across four lanes of southbound traffic, and hit a six-to-
eight-inch high grassy median. The impact lifted Glenn's car into
the air and it landed on top of the O'Brien car, killing Maria and
injuring Lisa. Glenn was found to have been driving while under
the influence of alcohol and speeding at the time of the accident. 
The cause of Maria O'Brien's death was found to be vehicular
homicide, of which Glenn subsequently was convicted.
 Lisa and Edward O'Brien filed suit against Glenn and the
City. Count one of their consolidated five-count complaint
alleged the City acted willfully and wantonly in failing to install
a median barrier, causing serious injuries to Marie and Lisa
O'Brien. Count two claimed negligence against Glenn. Count three
asserted a claim against both defendants under the Survival
Statute. 755 ILCS 5/27-6 (West 1994). Count four alleged that the
City's willful and wanton conduct and Glenn's negligence
proximately caused Marie O'Brien's death, and plaintiffs' loss of
society. Count five pled that Lisa O'Brien suffered emotional
distress. Three months later, the O'Briens filed an amended
complaint, which restated counts one and four to allege negligent
rather than willful and wanton conduct by the City. The City moved
for summary judgment, but later withdrew the motion without
prejudice and filed an answer to plaintiffs' complaint. 
 Lisa O'Brien next filed a second amended complaint, adding
three counts. Counts six and seven alleged the City owed
plaintiffs a duty to install median barriers under sections 3-
102(a) and 3-103(a) of the Local Governmental and Governmental
Employees Tort Immunity Act ("Tort Immunity Act"). 745 ILCS 10/3-
102(a), 3-103(a) (West 1994). Count eight alleged the City's
conduct was willful and wanton.
 The City thereafter filed a second motion for summary
judgment, arguing that a statute of repose barred the O'Brien
claims, and that it owed plaintiffs no duty, under either the
common law or the Tort Immunity Act. In response, O'Brien offered
evidence that showed the City produced designs for and engineered
a Lake Shore Drive reconstruction project. This evidence included
two 1967 letters by city officials stating the need for median
guard rails on North Lake Shore Drive; a 1979 agreement between the
City and the State obligating the City to maintain City streets; 
a 1966 agreement, which stated that improvements to the Drive would
be made according to "plans, specifications, and special
provisions, prepared by and under the direction of the City"; and
the affidavit of a former State transportation official explaining
that the City operated and maintained the area around 2700 north on
the Drive before 1986. 
 The circuit court denied the City's motion for summary
judgment. After O'Brien filed a third amended complaint, which
deleted count eight, the City again unsuccessfully moved for
summary judgment. During this time, O'Brien filed a fourth amended
complaint, which no longer contained allegations against Glenn
because O'Brien voluntarily dismissed him from the suit. O'Brien
next filed a fifth amended complaint, which restated some of the
allegations and emphasized the City's knowledge of the dangerous
condition of the road and the need for its correction. 
 Less than one month later, Lisa O'Brien filed a sixth amended
complaint, which omitted several references to the City's design of
the reconstruction project and added other allegations.
 The City moved to dismiss O'Brien's sixth amended complaint
pursuant to section 2-619 of the Code of Civil Procedure, 735 ILCS
5/2-619 (West 1994). In addition to restating its statute of
repose argument, the City contended that the Tort Immunity Act did
not create new causes of action, and that the portion of O'Brien's
complaint based upon the Act should be dismissed. The City further
asserted that O'Brien failed to allege facts establishing the
elements of a common law negligence claim. At a hearing on the
motion to dismiss, the circuit court expressed its belief that
O'Brien could state a claim that the City should have upgraded the
safety features on the Drive because it knew or should have known
that the area was unreasonably dangerous. The court explained,
however, that the sixth amended complaint did not allege enough
facts to support this argument and suggested that O'Brien submit a
proposed seventh amended complaint, together with authority to
support the cause of action. 
 At a hearing on the motion for leave to file the seventh
amended complaint, O'Brien maintained that the complaint
sufficiently alleged the City designed, maintained and exerted
complete control over the Drive. O'Brien explained that once
plaintiffs proved these facts at trial, the City would be held
liable for voluntarily undertaking to assume responsibility for the
road. 
 The circuit court found that plaintiffs failed to show the
existence of a duty. The court first examined the 1966 maintenance
agreement, which plaintiffs offered as proof that the City owed a
duty. The court interpreted the agreement to give the City
authority to fix potholes and repair the road's surface, but not to
perform major improvements such as erecting median barriers. The
agreement therefore did not impose a duty to erect the barriers. 
 In addition, the court examined count one of plaintiffs'
seventh amended complaint to determine if it sufficiently alleged
the City owed a duty under the theory of voluntary undertaking. 
The court found that the allegations established only that the City
had notice of unsafe conditions on the Drive, but failed to show
the existence of a duty to install median barriers. The court
concluded that plaintiffs failed to state a cognizable claim
against the City, and denied O'Brien leave to file seventh and
eighth amended complaints. O'Brien appeals.
 I
 O'Brien asserts error in the circuit court's dismissal of her
sixth amended complaint. When reviewing a dismissal for failure to
state a cause of action, the court accepts all well-pleaded facts
as true, and interprets the facts in the light most favorable to
plaintiff. Israel v. National Canada Corp., 276 Ill. App. 3d 454,
464, 658 N.E.2d 1184 (1995); McCormick v. Kruk, 220 Ill. App. 3d
449, 451, 581 N.E.2d 73 (1991). Dismissal is warranted only if,
based on the pleadings, no set of facts could be proven that would
entitle plaintiff to relief. McCormick, 220 Ill. App. 3d at 451. 
The appellate court exercises de novo review of a circuit court's
order granting or denying motions to dismiss. Kleinwort Benson v.
Quantum Financial Services, ___ Ill. App. 3d ___, ___ N.E.2d ___;
Lawson v. City of Chicago, 278 Ill. App. 3d 628, 634, 662 N.E.2d
1377 (1996). 
 The City initially argues that O'Brien's claim is time-barred,
because a ten-year statute of repose bars any claims brought more
than ten years after the reconstruction project was completed. 735
ILCS 5/13-214(b) (West 1994) (section 13-214(b)). O'Brien contends
that the statute does not apply here because her complaint
addresses only actions taken by the City after completing the
project.
 Section 13-214(b) provides:
 "No action based upon tort, contract or
 otherwise may be brought against any person
 for an act or omission of such person in the
 design, planning, supervision, observation or
 management of construction, or construction of
 an improvement to real property after 10 years
 have elapsed from the time of such act or
 omission." 735 ILCS 5/13-214(b) (West 1994).
 Section 13-214(b) applies to all parties engaged in
construction activities, including municipalities. Gavin v. City
of Chicago, 238 Ill. App. 3d 518, 520, 606 N.E.2d 506 (1992)
(Gavin); Lombard Co. v. Chicago Housing Authority, 221 Ill. App. 3d
730, 735, 587 N.E.2d 485 (1991). Municipal defendants may invoke
section 13-214(b) as a defense if they participated in some way in
the construction of the property at issue, and are not being sued
simply as owners of the property. Gavin, 238 Ill. App. 3d at 521;
Lombard, 221 Ill. App. 3d at 735. In addition, section 13-214(b)
applies not only to the construction of real property, but also to
work performed to improve roads and highways. Billman v. Crown-
Trygg Corp., 205 Ill. App. 3d 916, 920-21, 922, 563 N.E.2d 903
(1990). 
 In the present case, the City participated in the construction
of property when it engineered and designed the reconstruction
plans and specifications used to rebuild the Drive. Furthermore,
the City's work on the reconstruction of the Drive "improved" the
road. The plans and specifications created by the City, and used
by the County to reconstruct the Drive, made the road more
attractive, safer, and easier to use. The construction qualifies
as an improvement and, under section 13-214(b), any suits regarding
that construction must be initiated within ten years. O'Brien's
suit, brought more than ten years after the reconstruction was
completed, is time-barred.
 O'Brien argues that section 13-214(b) is not controlling
because her complaint does not allege the existing median was
defectively designed. In her sixth amended complaint, she
endeavored to avoid stating a claim for design defects by alleging
that the City negligently "operated, maintained, repaired and
altered" the Drive; "failed to alleviate or correct the dangerous
condition even after applicable road safety standards changed and
experience demonstrated the road was not safe"; and negligently
"maintained the existing barrierless median." 
 In the past, section 13-214(a) has been applied only to tort
cases in which the plaintiff alleges a design defect. In Gavin,
the court noted in dictum that because the plaintiffs' complaint
alleged defective design, rather than failure to maintain, section
13-214(b) applied to the case. Gavin, 238 Ill. App. 3d at 521. In
contrast, Ocasek v. City of Chicago, 275 Ill. App. 3d 628, 656
N.E.2d 44 (1995), involving analogous facts and issues, held that
plaintiff's claim was barred by section 13-214(b), citing section
13-214(b) as the "applicable statute of repose for cases predicated
upon design defects." 275 Ill. App. 3d at 631. 
 Although O'Brien avoids using the term "design defect," the
underlying cause of action in the present case is essentially the
same as in the design defect cases, that the city created and
maintained a dangerous condition. The crux of O'Brien's complaint
is the dangerousness of the existing median, requiring that a new
median be installed, and is a claim for defective design in a
different form. Section 13-214(b) bars her claim.
 O'Brien relies on Cole v. City of East Peoria, 201 Ill. App.
3d 756, 559 N.E.2d 773 (1990), as support for her contention that
section 13-214(b) does not apply to the present case because the
allegations focus on the City's subsequent failure to correct the
dangerous condition, and not on the initial design. Defendant in
Cole did not raise section 13-214(b) as a defense to liability. In
addition, plaintiff there alleged specific facts establishing
affirmative actions taken by defendant less than four years before
the accident in Cole occurred. The Cole plaintiff also alleged
that the defendant knew its recent actions created a dangerous
situation, but did not remedy the situation. 201 Ill. App. 3d at
757. In the present case, however, O'Brien does not allege that
the City took any recent affirmative action that increased the
dangerous condition of the Drive. The sixth amended complaint
claims that the City failed to correct a dangerous condition it
created in the 1972 reconstruction project, a claim time-barred by
section 13-214(b), as noted above.
 The parties also dispute whether O'Brien stated a cause of
action for ordinary negligence. In order to establish a negligence
claim, plaintiff must allege facts demonstrating that defendant
owed plaintiff a duty, which defendant breached, and plaintiff
suffered injuries or damages proximately caused by the breach. 
Rowe v. State Bank of Lombard, 125 Ill. 2d 203, 215, 531 N.E.2d
1358 (1988); Pelham v. Griesheimer, 92 Ill. 2d 13, 18, 440 N.E.2d
96 (1982). 
 The City argues that O'Brien failed to offer facts
sufficiently alleging the existence of a duty. The determination
of whether a duty exists is a legal issue that must be decided by
the court. Sisk v. Williamson County, 167 Ill. 2d 343, 346, 657
N.E.2d 903 (1995); McLane v. Russell, 131 Ill. 2d 509, 514, 546
N.E.2d 499 (1989). O'Brien contends that the City owes her a duty
by virtue of sections 3-102(a) and 3-103(a) of the Tort Immunity
Act which, she asserts, codify the common law duty owed her by the
City. 745 ILCS 10/3-102(a), 10/3-103(a) (West 1994).
 The traditional common law rule imposes a duty on
municipalities to maintain public property in a reasonably safe
condition. This duty mandates that municipalities maintain the
property, but does not require that they make public improvements. 
Ross v. City of Chicago, 168 Ill. App. 3d 83, 87, 522 N.E.2d 215
(1988) (Ross); Horrell v. City of Chicago, 145 Ill. App. 3d 428,
432, 495 N.E.2d 1259 (1986) (Horrell). Municipalities are not
liable for failure to make improvements, even if authorized to do
so by an ordinance, unless they actually undertake the improvement. 
Ross, 168 Ill. App. 3d at 87; Horrell, 145 Ill. App. 3d at 432. 
Sections 3-102(a) and 103(a) codify these duties but do not impose
any new obligations on local governments. Horrell, 145 Ill. App.
3d at 435.
 This court previously has held that the City has no duty to
erect median barriers on the Drive. Ross, 168 Ill. App. 3d at 91;
Charpentier v. City of Chicago, 150 Ill. App. 3d 988, 995, 502
N.E.2d 385 (1986) (Charpentier). In some cases, however, the City
may owe a duty to remove a median strip that creates an
unreasonably dangerous condition on the road. Santelli v. City of
Chicago, 222 Ill. App. 3d 862, 868, 584 N.E.2d 456 (1991). In
Santelli, the court distinguished plaintiff's allegations from
those found in the Charpentier and Ross decisions. In Santelli,
the plaintiff alleged that the existing median strip on an "S"
curve constituted an unreasonably dangerous condition. 222 Ill.
App. 3d at 865, 868. In contrast, in Charpentier, the plaintiffs
alleged failure to install a barrier, and in Ross, plaintiffs
articulated failure to replace the median strip with a median
barrier. Ross, 168 Ill. App. 3d at 88; Charpentier, 150 Ill. App.
3d at 990. 
 The present case is similar to Ross and Charpentier in that
plaintiffs in all three cases claimed the City owed a duty to erect
median barriers on the Drive. O'Brien's complaint states that the
median strip should have been replaced with a barrier, focuses on
the City's failure to do so, but fails to establish that the City
owes a duty to erect median barriers. 
 The circuit court did not err in dismissing O'Brien's sixth
amended complaint. Her claim is time-barred, and failed to
sufficiently allege the duty element of a negligence claim. In
light of this holding, we need not address other issues raised by
the parties with regard to this complaint.
 II
 O'Brien also argues that the circuit court abused its
discretion by denying her leave to file a seventh amended
complaint. Section 2-616(a) of the Code of Civil Procedure permits
parties to amend their pleadings on "just and reasonable terms,"
and "[a]t any time before final judgment." 735 ILCS 5/2-216(a)
(West 1994). Furthermore, section 2-616(c) provides that a
"pleading may be amended at any time, before or after judgment, to
conform the pleadings to the proofs." 735 ILCS 5/2-216(c) (West
1994). 
 These provisions require that motions to amend pleadings be
liberally granted to enable parties to present fully their causes
of action. Jeffrey M. Goldberg & Associates v. Collins Tuttle &
Co., 264 Ill. App. 3d 878, 885, 637 N.E.2d 1103 (1994) (Goldberg);
Weldon v. Hawkins, 183 Ill. App. 3d 525, 533, 539 N.E.2d 229
(1989). Courts should permit amendment if it would further the
interests of justice. Weldon, 183 Ill. App. 3d at 534; Williams v.
Northwestern University, 147 Ill. App. 3d 374, 380, 497 N.E.2d 1226
(1986). Parties do not, however, enjoy an absolute right to amend
their pleadings. Baker v. Walker, 173 Ill. App. 3d 836, 841, 528
N.E.2d 5 (1988).
 The circuit court's determination whether to grant or deny
amendments to pleadings is a matter of discretion, which may not be
reversed absent discretionary abuse. In re Estate of Hoover, 155
Ill. 2d 402, 416, 615 N.E.2d 736 (1993); Jessen v. Sverdrup and
Parcel and Associates, Inc., 218 Ill. App. 3d 901, 904, 579 N.E.2d
14 (1991). To determine whether discretion has been abused, four
factors are considered: whether (1) the proposed amendment would
cure the defective pleading; (2) other parties would suffer
prejudice or unfair surprise because of the proposed amendment; (3)
the proposed amendment is timely; and (4) previous opportunities to
amend the pleading could be identified. Loyola Academy v. S & S
Roof Maintenance, Inc., 146 Ill. 2d 263, 273, 586 N.E.2d 1211
(1992); Goldberg, 264 Ill. App. 3d at 885. 
 The only factor involved in the present case is whether the
additional allegations in the seventh amended complaint cured the
defects found in the sixth amended complaint. O'Brien attempted to
cure the first defect, the allegation of defective design that
time-barred her claim, by alleging instead that the existing median
was unreasonably dangerous, and by omitting any references to the
City's failure to install a median barrier. The seventh amended
complaint alleges that at the time of the 1986 accident, the City
"controlled, possessed, maintained, constructed, supervised and
operated" the Drive area near 2700 North. The complaint further
claims that the City "had unique knowledge" that the increased use
of the Drive rendered existing conditions unreasonably dangerous.
In addition, the complaint states that the City negligently failed
to remove the unreasonably unsafe conditions. These statements, in
contrast to those in the sixth amended complaint, do not expressly
allege that the existing median was defective when originally
designed by the City. 
 We need not decide, however, whether section 13-214(b) applies
to tort cases that do not include design defect claims, because
O'Brien's claim must be dismissed for failure to allege
sufficiently the duty element of her negligence claim. O'Brien
attempted to correct this second defect in her complaint, alleging
that the City voluntarily assumed a duty by designing the
reconstruction project in the 1960s; providing "complete
operational and maintenance services," including police protection
for the Drive; conducting traffic safety studies and traffic
accident recordkeeping; and advising the State of the dangerous
condition of the Drive. 
 The doctrine of voluntary undertaking recognizes that one who
undertakes to render services to another can be liable for injuries
caused by the failure to exercise due care when performing the
undertaking. The scope of the duty of care, however, is limited to
the extent of the undertaking. Rhodes v. Illinois Central Gulf
R.R., 172 Ill. 2d 213, 239, 665 N.E.2d 1260 (1996) (Rhodes). The
doctrine is based upon the proposition that one who assumes to act,
although gratuitously, is dutybound to act carefully. Nelson v.
Union Wire Rope Corp., 31 Ill. 2d 69, 74, 199 N.E.2d 769 (1964).
 Many of the courts' decisions regarding the voluntary
undertaking theory primarily rest on policy principles. For
instance, in Rhodes, plaintiff claimed the railroad voluntarily
undertook a duty to aid decedent when its employees called the
police after finding decedent lying down in a waiting room. The
Rhodes court disagreed, holding the railroad could not be liable,
because a contrary holding "would discourage citizens from taking
even this most basic action to obtain assistance for an injured
stranger." Rhodes, 172 Ill. 2d at 240.
 In Frye v. Medicare-Glaser Corp., 153 Ill. 2d 26, 605 N.E.2d
557 (1992) (Frye), the court similarly declined to extend the
voluntary undertaking theory, holding that a pharmacist was not
liable for naming some, but not all, of a medication's side
effects, in belief that a contrary holding might cause pharmacists
to "refrain from placing any warning labels on containers,"
depriving consumers of warnings which might be beneficial. 153
Ill. 2d at 33.
 The voluntary undertaking theory generally has been recognized
when one party agrees to provide security services for another.
Cross v. Wells Fargo Alarm Services, 82 Ill. 2d 313, 317, 412
N.E.2d 472 (1980); Pippin v. Chicago Housing Authority, 78 Ill. 2d
204, 374 N.E.2d 1055 (1979). Although there may be no common law
duty to protect others, when a party voluntarily undertakes such
protection, a duty arises to exercise reasonable care. Cross, 82
Ill. 2d at 317. 
 O'Brien contends that the voluntary assumption rule should be
applied in the present case because the City voluntarily agreed to
protect others by maintaining the roads and studying traffic
patterns. If these actions formed the basis for a voluntary
undertaking, however, every municipality that repaired roads within
its jurisdiction would face liability for any accidents occurring
on those roads. Municipalities might refrain from conducting even
minor repairs in order to avoid this liability, resulting in a
greater number of accidents. Frye, 153 Ill. 2d at 33. In
addition, the performance of minor repairs such as filling potholes
and resurfacing roads cannot be considered a voluntary undertaking
by the City to reconstruct the road completely. 
 The circuit court therefore did not abuse its discretion in
denying O'Brien leave to file a seventh amended complaint.
 III
 O'Brien lastly urges circuit court abuse of discretion by
denying her leave to file an eighth amended complaint. O'Brien
insists that the complaint would correct defects found in the
seventh amended complaint. The record does not contain the
proposed eighth amended complaint.
 This court may not decide the merits of a proposed complaint
that has not been made part of the record. An appellant has the
burden of presenting the reviewing court with a sufficiently
complete record that would support a claim of error. Cruz v.
Columbus-Cuneo-Cabrini Medical Center, 264 Ill. App. 3d 633, 639,
636 N.E.2d 908 (1994); International Amphitheatre Co. v. Vanguard
Underwriters Insurance Co., 177 Ill. App. 3d 555, 564, 532 N.E.2d
493 (1988). A reviewing court may not consider any matter that is
not contained in the record. International, 177 Ill. App. 3d at
564.
 O'Brien claims the court's decision in Northrup Corp. v.
Crouch-Walker, Inc., 175 Ill. App. 3d 203, 212, 529 N.E.2d 784
(1988), is dispositive of this issue. In Northrup, the court found
that plaintiff stated a legally cognizable claim in its second
amended third-party complaint, and should have been granted leave
to file a third amended third-party complaint to allege additional
facts. 175 Ill. App. 3d 203 at 206, 213. In contrast to plaintiff
in Northrup, in the present case, O'Brien failed to state a legally
cognizable claim in either her sixth amended complaint or her
seventh amended complaint. 
 O'Brien also notes this state's liberal pleading rules. 
Nevertheless, a reviewing court will not "tread beyond the record"
and speculate as to what O'Brien might allege in an amended
complaint. In re Marriage of Glessner, 119 Ill. App. 3d 306, 313,
456 N.E.2d 311 (1983). 
 For the reasons stated above, the decision of the circuit
court is affirmed. 
 Affirmed.
 DiVITO and BURKE, JJ., concur.